[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
AMENDED MEMORANDUM OF DECISION
The plaintiffs filed a nine count amended substituted complaint on September 22, 1988.
The issue presently before the court is the determination, of the amount of damages as to each defendant. The trial for damages commenced on January 18, 1990, and after having been heard on divers days before and after the court's vacation concluded on November 30, 1990. The court also viewed the premises in issue on December 3, 1991. The last pleadings were filed on February 7, 1991.
This trial was preceded by a bifurcated hearing to determine two issues on the question of liability before the Honorable Frank S. Meadow. The two issues that the court had to decide were: (1) should the court pierce the corporate veil of Timberland Development Corporation ("Timberland") to hold Joseph and Louise Giammattei on Counts two, five, eight and nine of the complaints, individually liable, and (2) is complaint that the defendant breached the implied statutory New Home Warranties Act (as to defendants Timberland, Louise Giammattei, Joseph Giammattei, Sherwood Associates, Warren Siegel, and Ira Kroopneck); Breached the express statutory New Home Warranties Act (as to defendants Sherwood CT Page 5249 Associates, Joseph Giammattei, Warren Siegel, and Ira Kroopneck); breached the contract (as to defendants Timberland, Louise Giammattei, and Joseph Giammattei); and violated the Connecticut Unfair Trade Practices Act ("CUTPA").
[T]he doctrine of caveat emptor has retained vitality in the area of real estate except in those instances involving a construction contract, where a promise is implied to construct in a workmanlike manner according to specifications. Graveline v. Posin, 31 Conn. Sup. 316, 320
(C.P., 1974). It has been held that one who constructs a building impliedly warrants that the building shall be erected in a workmanlike manner and in accordance with good usage and accepted practices in the community in which the construction and work are done. Vernali v. Centrella,28 Conn. Sup. 476, 479 (Super.Ct. 1970) (citation omitted). [T]he builder-vendor of a structure used for residential purposes impliedly warrants to his purchaser that the structure was erected in a workmanlike manner according to its intended use. Greentree Condominium Assn. Inc., v. RSP Corporation, 36 Conn. Sup. 160, 165 (Super.Ct. 1980) (citation omitted). "`The purchase of a home is not an everyday transaction for the average family, and in many instances is the most important transaction of a lifetime. To apply the rule of caveat emptor . . . in favor of a builder who is daily engaged in the business of building and selling houses, is manifestly a denial of justice."' Id. 165-66 (citation omitted).
General Statutes 47-116 et seq. is the New Home Warranties Act. It created express and implied warranties for an original buyer of a newly constructed single family home. [T]he purpose of P.A. 75-637 [codified as Conn. Gen. Stat. 47-117 and 47-118] is to afford protection to new home buyers. Any other interpretation would thwart the purpose of the act as well as the intent of the legislature. Fava v. Arrigoni, 35 Conn. Sup. 177, 179 (Super.Ct. 1979).
In 1975 the Connecticut General Assembly passed P.A. 75-637, which is codified as Conn. Gen. Stat. 47-117 and47-118. General Statute 47-117 provides:
 (a) Express warranties by a vendor are created as follows: Any written affirmation of fact, or promise which related he improvement and is made a part of the basis of the bargain between the vendor and the purchaser shall create an express warranty that the improvement conforms to such affirmation or promise; (2) any written description of the improvement, including plans and specifications thereof which is made a part of the basis of the bargain between the vendor and the CT Page 5250 purchaser shall create an express warranty that the improvement conforms to such description; and (3) any sample or model which is made a part of the basis of the bargain between the vendor and the purchaser shall create an express warranty that the improvement conforms substantially to such sample or model.
 (d) An express warranty shall terminate: (1) In the case of an improvement completed at the time of the delivery of the deed to the purchaser, one year after the delivery or one year after the taking of possession by the purchaser, whichever occurs first; and (2) in the case of an improvement not completed at the time of delivery of the deed to The purchaser, one year after the date of the completion or one year after taking of possession by the purchaser, whichever occurs first.
General Statute 47-118 creates implied warranties and in pertinent part states:
 (a) In every sale of an improvement by a vendor to a purchaser, except as provided in subsection (I)) of this section or excluded or modified pursuant to subsection (d), warranties are implied that the improvement is: (1) Free from faulty materials; (2) constructed according to sound engineering standards; (3) constructed in a workman-like manner, and (4) fit for habitation, at the time of the delivery of the deed to a completed improvement, or at the time of completion of an improvement not completed when the deed is delivered.
 (b) The implied warranties of subsection (a) of this section shall not apply to any condition that an inspection of the premises would reveal to a reasonably diligent purchaser at the time the contract is signed.
 (e) The implied warranties created in this section shall terminate: (1) in the case of an improvement completed at the time of the delivery of the deed to the purchaser, one year after the delivery or one year after the taking of possession by the purchaser, whichever occurs first; and (2) in the case of an improvement not completed at the time of delivery of the deed to the purchaser, one year after the dale of the completion or one year after taking of possession by the purchaser, whichever occurs first.
[T]he one year period allowed by 47-118 (e) does not limit the period within which an action based on the implied warranties provided by the statute must be brought. The one year period from the delivery of the deed or the taking of possession is a limitation upon the period within which an action for breach of warranty may arise, not within which it must be commenced. Cashman v. Calvo, 196 Conn. 509, 511 (1985). CT Page 5251
 [A] cause of action under General Statutes 47-118. . . arise[s] when the purchasers discover that a breach of warranty entitling them to recompense has occurred. This interpretation is consistent with 47-118 (b), which limits the warranties to only those defects not apparent to a reasonably diligent purchaser at the time of the contract of sale. If the defect becomes reasonably discoverable within the one year term provided by 47-118e, the purchaser may claim a breach of the warranty, and the action on that breach, like any other action, need not be brought immediately, but only before it is barred by some statutory limitation.
Id. at 511-12, n. 1.
The language of General Statutes 47-117 (d) mirrors General Statute 47-118 (e). Therefore, the foregoing discussion is applicable to express warranties also.
The defendants have raised the issue of timeliness of he discovery of the defective conditions. The defendants allege that the discovery of the defects were beyond the time limit provided in Conn. Gen. Stat. 47-117 (d) and 47-118 (e).
As to count I is found that defendant Timberland has breached the implied statutory New Home Warranties. Specifically, the court finds that the plaintiffs were rushed through the inspection of the new home, approximately one hour before closing, and therefore all the defects were not listed on the punch list. The punch list is not an all-inclusive list because it does not include after the fact findings, such as squeaky floors, leaky roofs or settling steps, items that were not easily discoverable upon inspection. In some instances where the defects were small the defendant, Timberland repaired the defects but basically failed to do so in all instances. The defendant, Timberland, has violated the implied warranty provided for in Conn. Gen. Stat. 47-118 in many if not all instances in the various homes. The homes were constructed with faulty materials and not according to sound engineering standards. Furthermore, the court finds that the homes were not constructed in a workmanlike manner.
As to count II the defendants, Louise and Joseph Giammattei, did not personally commit wrongs in contravention of plaintiffs' legal rights. Therefore, as per Judge Meadow's ruling Joseph 
Louise Giammattei are not personally liable for the plaintiffs' damages because they did not breach the implied warranties in the CT Page 5252 New Home Warranties Act.
As to count III Joseph Giammattei, Ira Kroopneck, and Warren Siegel did commit wrongful acts as partners of Sherwood Associates. The court finds that the defendants used lower quality materials than those contracted for because they wanted to construct the homes in the cheapest and quickest way possible. Furthermore, the defendants did not control their own workmen and subcontractors as well as they should have. Due to the defendant Sherwood Associates' actions the plaintiffs have suffered a loss and/or an injury. The general partners of Sherwood Associates, Joseph Giammattei, Ira Kroopneck, and Warren Siegel, are jointly and severally liable for plaintiffs' damages. Therefore the court finds that the partnership Sherwood Associates has violated the implied warranty provided in Conn. Gen. Stat. 47-118, see discussion under count I.
As to count IV and VI the defendants, Sherwood Associates, Joseph Giammattei, Warren Siegel, Ira Kroopneck and Timberland have failed to honor the express warranties provided in Conn. Gen. Stat. 47-117.
Furthermore, the court finds the defendants have violated the express warranties in Conn. Gen. Stat. 47 117. The defendants violated the express warranties in that the improvements did not conform to the affirmation or promise made by the defendant vendors, and they did not conform to the description of the improvement and that the improvement did not conform substantially to the model.
The defective conditions existed from the taking of possession by the plaintiffs and some defects were not noticed right away even though they existed at the time of taking possession. Therefore, the defects were identified and/or arose within one year after taking possession and as a result the action is not time barred.
As to count V, defendants Louise and Joseph Giammattei as per Judge Meadows' ruling, they are not personally liable for the breach of the express warranties by Timberland Development Corp. "`The general rule of damages in a breach of contract action is that the award should place the injured party in the same position as he would have been in had the contract been performed."' O'Hara v. State, 218 Conn. 628, 642 (1991) (citation omitted). For a breach of a construction contract involving defective or unfinished construction, damages are measured by computing either "`(i) the reasonable cost of construction and completion in accordance with contract, if this is possible and does not involve unreasonable economic waste, or (ii) the difference between the value that the product contracted for would have had and the value CT Page 5253 of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would not involve unreasonable economic waste."' Keppel v. BaRoss Builders, Inc., 7 Conn. App. 435, 438 (1986) (citations omitted).
The damages for breach of warranty under the New Home Warranties Act would be calculated the same as breach of contract damages.
The court finds that damages shall be measured by awarding the reasonable cost of construction and completion by the terms of the contract so to give the plaintiffs the benefit of their bargain (see itemized list of damages).
As to count VII the plaintiffs entered into a contract with defendant Timberland for the construction and purchase of their new homes in Sherwood Forest. The court finds as part of the basis of the bargain that the defendant Timberland promised to construct the homes in a workmanlike manner with all materials guaranteed to be in accordance with specifications. The court finds that defendant, Timberland, performed in a nonworkmanlike manner because of the defects that became apparent after completion of the homes. The defendant has failed to comply with its obligations under the contract in many or all respects. The court finds that the defendant Timberland has breached the contract with the plaintiffs causing them to suffer damages.
Awarding the plaintiffs the cost to finish or properly complete their homes puts the plaintiffs in the same position as they would have been in had the contract been performed properly in the first place.
As to count VIII, defendants Louise Giammattei and Joseph Giammattei did not breach the contract with the plaintiffs and are, therefore, not liable for the damages suffered.
As to count IX, in determining whether a practice violates CUTPA the following criteria should be followed:
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. Thus, a violation of CUTPA may be established by showing either an actual CT Page 5254 deceptive practice; or a practice amounting to a violation of public policy.
Sanghavi v. Paul Revere Life Ins. Co., 214 Conn. 303, 311 (1990); Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 254
(1988) (citations omitted). "`[T]he CUTPA plaintiff need not prove reliance or that the representation became part of the basic of the bargain.'" Webb Press Services Corporation v. New London Motors, Inc., 205 Conn. 479, 484 (1987). "`[K]nowledge of falsity, either constructive or actual, need not be proven to establish a violation of CUTPA."' Eamiello v. Liberty Mobile Home Sales, Inc., 208 Conn. 620, 653 (1988). [A]ll three criteria . . . "``do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.''" Atlantic Richfield Co. v. Canaan Oil Co.,202 Conn. 234, 242 (1987) (citation omitted).
In count IX the defendants Timberland, Sherwood Associates, Warren Siegel and Ira Kroopneck and Joseph Giammattei are engaged in the development and sale of new homes. The court finds that the defendants' acts violated the Connecticut Unfair Trade Practices Act, codified as Conn. Gen. Stat. 42-110a et seq. The defendants Timberland Sherwood Associates, Warren Siegel, Ira Kroopneck and Joseph Giammattei violated the New Home Warranties Act by breaching the implied and express warranties provided for within the statute. Defendants' actions were offensive because they were in contravention of public policy advanced by the New Home Warranties Act which is to protect new home buyers.
General Statute 42-110 (g) states in pertinent part: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110 (b), may bring an action . . . to recover actual damages. . . . The court may in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper." However, [t]he existence of common law or other statutory remedies does not necessarily preclude recourse to CUTPA. Ivey, Barnum O'Mara v. Indian Harbor Properties, Inc. . . ., 190 Conn. 528, 539, n. 14 (1983).
Awarding punitive damages and attorney's fees under CUTPA is discretionary; Conn. General Statutes 42-110g(a) and (d) . . . . "In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." Gargano v. Heyman, 203 Conn. 616, 622
CT Page 5255 (1987) (citation omitted). The court finds that none of the defendants acted with a reckless indifference to the plaintiffs' rights. Furthermore, the defendants did not act in a malicious or evil way with a flagrant disregard for the plaintiffs' rights. While the defendants acted with haste to find the quickest and cheapest way to complete all of the homes, they did not act wantonly. Therefore, because the defendants violated the New Home Warranties Act they have acted in contravention to the public policy of Connecticut to protect the new home buyer and because the defendants breached the public policy of the New Home Warranties Act they have violated CUTPA as well. Therefore, plaintiffs are entitled to costs, including reasonable attorney's fees (Note: that attorney's fees will be determined at a later trial as stipulated to by the parties) pursuant to Conn. Gen. Stat. 42-110g. However, since the defendants did not act wantonly the plaintiffs are not entitled to punitive damages. Furthermore the court finds the plaintiffs are entitled to money damages.
Pursuant to evidence adduced at trial, in proof of damages complained of, plaintiff's have been damaged in the following amounts of:
George and Donna Murray 52 Rabbit Rock Road, Lot #29
 1. Foundation Cracks $ 300.00 2. Form Tie Patching 100.00 3. Step up in Garage 0 4. Subflooring 2,000.00 5. Gap and Deflection in 250.00 stair landing 6. Rear Deck 2,509.39 7. Roof Underlayment 2,000.00 8. Windows — Sealant 1,200.00 9. Chimney 9,000.00 10. Exterior siding/painting 250.00 11. Garage Wall Board 500.00 Thickness 12. Interior Guard 600.00 Rail Heights 13. Site Work 2,700.00 14. Kitchen Back Splash 150.00 15. Miscellaneous Carpentry 405.00 16. Interior Taping and Wall Preparation Work Done 600.00 Work to be Done 100.00 17. Exterior Siding — 50.00 Renailing CT Page 5256 18. Garage Door 50.00 Construction 19. Cut Joist Repair 200.00 ---------- $22,964.39
Richard and Marianne Cesare 8 Felicia Drive, Lot #36
 1. Foundation Cracks $ 300.00 2. Step up in Garage 3. Sub-flooring 2,000.00 Parquet Floor 600.00 4. Rear Deck 3,000.00 5. Roof Underlayment 2,000.00 6. Windows — Sealant 1,200.00 Bay Window Insulation 500.00 7. Chimney 8,000.00 (or 9,000) 8. Exterior Siding — Veneer 25.00 9. Garage Door Construction 50.00 10. Garage Wall Board 500.00 Thickness 11. Interior Guard 600.00 Rail Heights 12. Site Work 2,500.00 13. Joist Cut in 200.00 Basement 14. Kitchen Back Splash 25.00 15. Finished Carpentry 175.00 Kitchen 16. Interior Taping and 600.00 Wall Preparation 17. Interior Painting — 1,300.00 Walls Only ---------- $23,575.00 CO Jan. 8, 1986
Debbie and Ralph Amendola 12 Felicia Drive, Lot #38
 1. Foundation Crack $ 300.00 2. Form Tie Patching 100.00 3. Step Up in the Garage — 4. Subflooring 2,000.00 5. Gap and Deflection 250.00 in Stair Landing 6. Rear Deck 3,000.00 7. Roof Underlayment 3,000.00 8. Windows — Sealant 1,200.00 9. Garage Wall Board 500.00 Thickness CT Page 5257 10. Interior Guard Rail 600.00 Heights 11. Sitework (including deck) 3,200.00 12. Kitchen Back Splash 150.00 13. Miscellaneous Carpentry 405.00 14. Interior Taping 600.00 Painting 100.00 15. Cut Joists in Basement 200.00 ---------- $15,605.00
CO 12-20-85
Ellen and Vincent Benevento 6 Felicia Drive, Lot #35
 1. Foundation Cracks $ 300.00 2. Form Tie Patching 100.00 3. Step Up in the Garage 4. Subflooring 2,000.00 5. Gap and Deflection in 250.00 Stair Landing 6. Rear Deck 3,000.00 7. Roof Underlayment 3,000.00 8. Windows — Sealant 1,200.00 Bay Window Insulation 500.00 9. Chimney 8,000.00 (9,000) 10. Garage Wall Board 500.00 Thickness 11. Interior Guard Rail 600.00 Heights 12. Site Work 2,000.00 13. Kitchen Back Splash 150.00 14. Interior Taping and Wall Preparation Taping 600.00 Painting 100.00 15. Garage Door Construction 50.00 16. Front Porch and Steps Need Handrailings 300.00 ---------- $22,650.00
CO 12-21-85
Annette and Joseph Fraulo 11 Felicia Drive, Lot #31
 1. Foundation Crack $ 250.00 2. Form Tie Patching 100.00 3. Step up in Garage 4. Subflooring 2,000.00 CT Page 5258 5. Rear Deck 3,000.00 6. Roof Underlayment 3,000.00 7. Windows — Sealant 1,200.00 Bay Window Insulation 500.00 8. Garage Wall Board 500.00 Thickness 9. Interior Guard Rail 600.00 Heights 10. Kitchen Back Splash 30.00 11. Miscellaneous Carpentry 150.00 12. Exterior Siding 500.00 Renailing 13. Garage Door Construction 50.00 ---------- $11,880.00
CO Jan. 3, 1986
Patricia and John Murphy 21 Felicia Drive, Lot #33
 1. Foundation Crack $ 250.00 2. Step Up in the Garage 50.00 3. Subflooring 2,000.00 4. Gap and Deflection in 405.00 Stair Landing 5. Rear Deck 3,000.00 6. Roof Underlayment 3,000.00 7. Windows — Sealant 1,200.00 Bay Window Insulation 500.00 8. Chimney 8,000.00 9. Garage Wall Board 500.00 Thickness 10. Interior Guard Rail 600.00 Heights 11. Kitchen Back Splash 150.00 12. Repair Loose Kitchen 100.00 Partition 13. Interior — Taping 600.00 Painting 100.00 14. Garage Door Construction 50.00 15. Cut Joist in Basement 200.00 --------- 20,705.00 CO May 2, 1986
Cynthia and Louis Serenson 10 Felicia Drive, Lot #37
 1. Foundation Cracks $ 300.00 2. Step Up in the Garage 50.00 3. Subflooring 2,000.00 CT Page 5259 4. Gap and Deflection in 405.00 Stair Landing 5. Rear Deck 3,000.00 6. Roof Underlayment 3,000.00 7. Windows — Sealant 1,200.00 Bay Window Insulation 500.00 8. Chimney 8,000.00 9. Exterior Siding/Painting 550.00 (Including Loose Veneer) 10. Garage Wall Board 500.00 Thickness 11. Interior Guard Rail 600.00 Heights 12. Site Work 2,000.00 13. Kitchen Back Splash 150.00 14. Interior — Taping 600.00 Painting 100.00 15. Repairing unanchored 50.00 Pipe Columns in Garage 16. Repairing loose Gambrel 500.00 on front of house 17. Repairing loose kitchen 100.00 partition 18. Garage Door Construction (gaps) 50.00 ---------- $23,655.00
CO Feb. 3, 86
John and Barbara Shea 55 Rabitt Rock Road, Lot #21
 1. Foundation Crack $ 250.00 2. Form Tie Patching 100.00 3. Step Up in the Garage — 4. Subflooring 2,000.00 5. Rear Deck 3,000.00 6. Roof Underlayment 3,000.00 7. Windows — Sealant 1,200.00 8. Chimney 8,000.00 9. Exterior (loose siding and 550.00 veneer delamination) 10. Garage Wall Board 500.00 Thickness 11. Interior Guard Rail 600.00 Heights 12. Repair Loose Kitchen 100.00 Partition 13. Interior — Taping 600.00 Painting 100.00 CT Page 5260 14. Garage Door Construction 50.00 (gaps) 15. Site Work (see exhibit 7A) — 16. Repair Cracked Bathtub 500.00 (Shim underneath) ---------- $20,550.00
Certif. of use occupancy 2-28-86
Edward and Kathy Swiderski 14 Felicia Drive, Lot #39
 1. Foundation Crack $ 250.00 2. Step Up in the Garage — 3. Subflooring 2,000.00 4. Rear Deck 3,000.00 5. Roof Underlayment 3,000.00 6. Windows Sealant 1,200.00 Bay Window Insulation 500.00 7. Chimney 9,000.00 8. Exterior Siding (includes loose siding and delaminated veneer) 600.00 9. Garage Wall Board 500.00 Thickness 10. Interior Guard Rail 600.00 Heights 11. Site Work 1,500.00 12. Kitchen Back Splash 150.00 13. Repair Loose Kitchen 160.00 Partition 14. Repair Kitchen Skylight 100.00 15. Miscellaneous Carpentry 405.00 16. Interior Taping 600.00 Painting 100.00 17. Repair Kitchen Cabinets 200.00 18. Garage Pipe Columns 50.00 ---------- $23,915.00
CO May 30, 1986
Mana and Victor Vasconcelos 63 Rabbit Rock Road, Lot #25
 1. Foundation Cracks $ 300.00 2. Step Up in the Garage — 3. Subflooring 2,000.00 4. Rear Deck 3,000.00 5. Roof Underlayment 3,000.00 6. Windows Sealant 1,200.00 7. Exterior Siding 300.00 CT Page 5261 (delamination and Painting) 8. Garage Wall Board 500.00 Thickness 9. Interior Guard Rail 600.00 Heights 10. Site Work 300.00 11. Kitchen Back Splash 35.00 12. Repair Loose Kitchen 150.00 Partition 13. Repair Kitchen Skylight 200.00 14. Repair Shower Floor that 500.00 is moving and deflecting 15. Interior Taping and 550.00 Wall Preparation 16. Bay Window (insulation and 700.00 repair of split sash) 17. Garage Door Construction 50.00 (gap) 18. Repair of Gap in Sidewalk 700.00 and Driveway Joint 19. Cut Joists in Basement 200.00 20. Garage Pipe Column 50.00 ---------- $14,355.00
Certif. of use and occupancy 6-10-86
Patty and Michael Vono 18 Felicia Drive, Lot #40
 1. Foundation Crack $ 250.00 2. Form Tie Patching 100.00 3. Step Up in the Garage — 4. Subflooring 2,000.00 5. Rear Deck 3,000.00 6. Roof Underlayment 3,000.00 7. Windows — Sealant 1,200.00 Bay Window Insulation 500.00 8. Chimney 9,000.00 9. Exterior Siding/Painting 200.00 10. Garage Wall Board 500.00 Thickness 11. Interior Guard Rail 600.00 Heights 12. Sitework 2,000.00 13. Kitchen Back Splash 100.00 14. Bathroom Skylight Repair 300.00 15. Repair unanchored Pipe 50.00 Column in Garage 16. Garage Door Construction (Gaps) 50.00 CT Page 5262 17. Repair of Loose Kitchen 75.00 Partition 18. Tree Removal 200.00 (See exhibit 6J) ---------- $23,125.00
Co May 30, 1986
The court finds that all eleven of the plaintiffs have been damaged in the following amounts:
 George and Donna Murray $22,964.39 #52 Rabbit Rock Road, Lot #29
 Richard and Marianne Cesare $23,575.00 8 Felicia Drive, Lot #36
 Ralph and Debbie Amendola $15,605.00 #12 Felicia Drive, Lot #28
 Vincent and Ellen Benevento $22,650.00 #6 Felicia Drive, Lot. #35
 Joseph and Annette Fraulo $11,880.00 #11 Felicia Drive, Lot #31
 John and Patricia Murphy $20,705.00 #21 Felicia Drive, Lot #33
 Louis and Cynthia Serenson $23,655.00 #10 Felicia Drive, Lot #37
 John and Barbara Shea $20,550.00 #55 Rabbit Rock Road, Lot #21
 Edward and Kathy Swiderski $23,915.00 # 14 Felicia Drive, Lot. # 39
 Victor and Maria Vasconcelos $14,335.00 # 62 Rabbit Rock Road, Lot # 25
 Michael and Patty Vario $23,125.00 #18 Felicia Drive, Lot #40
Judgment is ordered for each of the plaintiffs as aforestated accordingly to recover money damages.
Costs and counsel fees are also found for and ordered to be paid to the plaintiffs, with the amounts to be determined by this court after a separate trial. CT Page 5263
William B. Ramsey State Trial Referee