[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REPORT OF ATTORNEY TRIAL REFEREE
A. FINDINGS OF FACT:
The attorney trial referee makes the following findings of fact:
1. Sometime in 1987, the plaintiff and the defendant entered into an oral contract whereby the defendant agreed to build a field stone retaining wall on the plaintiff's property with the plaintiff's stones for a fixed sum not to exceed approximately $10,000.00.
2. The purpose of the wall was to hold back an embankment along the plaintiff's driveway, beginning at the plaintiff's garage and following the curvature of the driveway for a distance of ninety feet, the height of the wall to follow the grade-elevation from approximately four feet at the garage, to five feet in CT Page 10143 the center, to two feet at the end.
3. The defendant had thirty years experience in all aspects of stone masonry (except swimming pools) and had constructed six to seven hundred similar walls.
4. The defendant selected stones from those shown him by the plaintiff on an old wall on her property.
5. The defendant agreed to provide "pea stone" fill material as drainage backfill behind the wall to cushion the effect of frost and water pressure on the wall.
6. The defendant worked with a crew of three men for two and a half weeks to build the wall, including three days to move eighteen loads of stone of approximately five tons each.
7. The plaintiff paid the defendant in full for the job with four checks totaling $10,280.00.
8. Sometime in the spring of 1989, an eight foot run of the five foot high midsection of the wall collapsed, leaving approximately two and a half feet of the base of that section standing. The plaintiff called the defendant who repaired the section at no charge to the plaintiff.
9. Sometime in 1989-90, a second section of wall, adjacent to the first section, collapsed in a similar manner. The defendant repaired this section at no cost to the plaintiff.
10. The defendant spent three days with three men at a value of $2,700.00 to repair approximately sixteen feet of wall five foot high.
11. Sometime in the spring of 1990, a thirteen foot long section of wall, adjacent to the second section, collapsed. This time, the defendant refused to make further repairs.
12. In May 1990, the plaintiff engaged Robert J. Isabelle, P.E. to view the wall and prepare a report as to the cause of its collapse. Mr. Isabelle found that the third section collapsed because the wall was not strong enough to hold back the pressure of the bank and was therefore prone to "bowing" at its midsection. He specifically found that the stones were not large enough, the wall was not thick enough and the backfill material was insufficient CT Page 10144 for the size and slope of the embankment. He considered the entire wall to be prone to failure and in need of repair or replacement.
13. The defendant contended that the stone wall failed because of the plaintiff's failure to construct and maintain a surface drainage ditch uphill from the wall and to seed the bank with a cover crop of sod. He testified that his cost was predicated on the plaintiff's doing this work.
14. In September 1990, the plaintiff engaged another stone mason, Steven Ashner, to tear down and replace the entire stone wall with two walls — a lower wall two feet wide at the base, twenty inches wide at the top, and three and a half feet high, and an upper wall twenty inches high, to be built on the bank above the base wall.
15. Mr. Ashner testified that the defendant's wall failed because of inadequate base and insufficient pitch.
16. Mr. Ashner built one wall instead of two, basically following the defendant's lay-out, but with larger base stones, more depth and greater pitch. The plaintiff paid Mr. Ashner $3,750.00 in September 1990 and $3,750.00 in April 1991, for a total of $7,500.00.
17. It also appears from the evidence that Mr. Ashner did not rebuild a four foot section of wall between the garage and the stairway, that he used many of the stones from the defendant's wall, and that he may have done other work for the plaintiff not directly associated with the wall reconstruction.
18. To date, the rebuilt wall has not failed, notwithstanding the absence of uphill drainage ditches.
19. The plaintiff claims $7,500.00 in damages, attorney's fees of $1,085.00 and costs.
B. ISSUES PRESENTED:
1. Is the defendant liable to the plaintiff for damages?
2. If so, what damages should be awarded?
3. If so, is the plaintiff entitled to attorney's fees? CT Page 10145
C. CLAIMS OF LAW AND CONCLUSIONS OF FACT:
1. It is not clear from the pleadings nor was it clear at the trial whether this is a breach of contract or a negligence action.
2. In order to recover under an oral construction contract, the plaintiff must establish the existence of an agreement between the parties, the terms of which are definite and certain. Augeri v. C.F. Wooding Co., 173 Conn. 426, 378 A.2d 538, 540 (1977). Furthermore, the plaintiff must prove that the defendant failed to perform his duties under the contract in a skillful, competent and workmanlike manner. Krol v. Goldring, 38 Conn. Sup. 610,458 A.2d 15, 17 (App. Sess. 1982). Whether or not every building contract carries with it an implied warranty is a matter of dispute. Compare, Scribner v. O'Brien, 169 Conn. 389, 363 A.2d 160 (1975), with Coburn v. Lenox Homes, Inc., 186 Conn. 370, 441 A.2d 620
(1982).
3. In order to recover for negligent construction, the plaintiff must prove that the defendant knew or should have known of the circumstances which would foreseeably result in the harm suffered. Coburn, supra at 624. "Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge." Id.
4. In this case, the attorney trial referee finds that the evidence establishes that:
 a. Large sections of the wall collapsed due to the size of the stones, the thickness of the wall, insufficient pitch and inadequate gravel backfill.
 b. The lack of uphill drainage ditches and sod were not the reasons for the failure of the wall because the wall did not erode, it collapsed. The rebuilt wall is apparently standing without such erosion control devices.
 c. If the defendant believed that the stones shown him by the plaintiff were undersized for the job, he should have rejected them or refused the job.
 d. The defendant was negligent in not foreseeing that the wall would not contain the embankment. Krol, supra; Coburn, CT Page 10146 supra. The cause of the failure was certainly apparent at the time the defendant repaired the two sections.
5. As to the issue of damages, the appropriate measure in this case is the reasonable cost to repair, i.e., to place the plaintiff in the same position as she would have been had the work been properly performed. Keppel v. BaRoss Builders, Inc., 7 Conn. App. 435,437-8, 509 A.2d 51 (1986). The following nuggets of evidence are gleaned from the rubble of the wall:
 a. The defendant's unit cost to build the wall from scratch was $115.00 per foot ($10,280.00 divided by 90 feet).
 b. The defendant's cost to repair two sections of wall (not charged to the plaintiff) was $225.00 per foot ($2,700.00 divided by 12 feet total).
 c. Mr. Ashner's cost to rebuild the wall was $7,500.00, but this figure included using the bulk of the stones moved by the defendant, not rebuilding the section of wall next to the garage, and some stair repair not directly related to the wall failure. At trial, Mr. Ashner was unable to quote a unit cost to rebuild or repair the wall.
 d. Based upon this evidence, the attorney trial referee awards the plaintiff $6,000.00 of Mr. Ashner's total bill of $7,500.00. See, Fuessenich v. DiNardo, 195 Conn. 144, 156, 487 A.2d 514 (1985).
6. Finally, the plaintiff's counsel was unable to cite a contractual provision or statute to support the plaintiff's claim for attorney's fees. In the absence of such authority, attorney's fees may not be awarded. Marsh, Day Calhoun v. Solomon, 204 Conn. 639, 652, 529 A.2d 702 (1987); Simonetti v. Lovermi, 15 Conn. App. 722, 726, 546 A.2d 331 (1988).
Michael D. Rybak Attorney Trial Referee