[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR RECUSAL DATED FEBRUARY 23, 1995
The defendant William J. Clark has filed a Motion For Recusal asking this court to recuse itself from hearing the above entitled matter. The Motion For Recusal is attached hereto.
This court began its involvement with the matter of Ferris and Clark prior to January 12, 1993. It is fair to say that during the time this court has been involved in this case, it has probably ruled on approximately 100 motions. The pleadings in the instant case were up to 84 as of November 3, 1994. Other cases were involved as well as post-judgment motions.
On May 20, 1993, after a lengthy hearing, this court refused to extend a restraining order previously granted to the plaintiff under the Relief From Abuse Statute § 46b-15. This court relied primarily on the lack of evidence of a threat of physical injury. The decision is attached hereto.
From May 20, 1993 through July 18, 1994, this court handled many motions concerning the parties. On July 18, 1994, after a lengthy hearing which ran approximately 20 days, this court issued an injunction against William Clark enjoining him from certain conduct. The goal of the court in issuing the injunction was to keep the parties apart, have them avoid each other and allow them to go on with their lives with the understanding that some of Mr. Clark's activities would be curtailed or terminated because of the court's order. After that order was issued, it was appealed and this court ruled on certain motions thereafter.
Thereafter, Motion #184 was filed which superseded Motion #179. Motion #184, which is dated November 3, is the instant proceeding that this court is presiding over, which alleges approximately thirty-five violations by the defendant of the court's order of July 18th. This court began hearings on that motion, but was not able to schedule consecutive hearing dates since this court was no longer assigned to family. The case had to CT Page 4959 be rescheduled as the administrative judge allowed. It was during the course of these proceedings that the motion for recusal came about. The court notes that a previous motion to recuse was filed by Mr. Clark which was denied. The court further notes in passing, that prior to the July 18, 1994 decision, Mr. Clark had written a letter requesting that this court in particular hear the case, so that as of December of 1993, I was his judge of choice.
The current hearing on the motion for contempt has been a contentious one. It has been difficult for all of the parties, Attorney Gazin and the witnesses. Mr. Clark's attitude throughout the contempt proceedings was one of being bound by an illegal order. In one of Mr. Clark's letters to Judge Lewis requesting that I disqualify myself from the case, he described this court's decision as "we have here what is arguably one of the worst — if not the worst — decisions in the history of the State of Connecticut."
This court held a hearing on February 28th concerning the motion to recuse.
The Law
The defendant, as well as the plaintiff, is entitled to the right to a fair trial by an impartial judge.
Cannon 3(C)(1) of the Code of Judicial Conduct requires a judge to disqualify himself or herself in any judicial proceeding in which his or her impartiality might reasonably be questioned.
"It is axiomatic that a trial judge must conduct all trial proceedings with the highest degree of impartiality . . . and that, as a minister of justice, a trial judge ought to be cautious and circumspect in his language and conduct." (Citation omitted; internal quotation marks omitted.) Labow v. Labow, 13 Conn. App. 330,333-34, cert. denied, 207 Conn. 806 (1988) "The trial judge should be careful to refrain from any statement or attitude which would tend to deny the defendant a fair trial. . . . Disqualification of a trial judge is not dependent upon proof of actual bias. . . . The controlling standard is whether a reasonable person who is aware of all the circumstances surrounding the judicial proceeding would question the judge's impartiality." (Citations omitted; internal quotation marks omitted.) Id., 334, quotingPapa v. New Haven Federal Teachers, 186 Conn. 725, 745-46 (1982). Cannon 3(C) reflects the purpose of avoiding even the appearance of CT Page 4960 impropriety in the realm of judicial conduct. The prevention of the appearance of impropriety is of vital importance in preserving confidence in the judiciary and the judicial process. Our Supreme Court has further indicated that the defendant is entitled to a hearing on a motion to recuse.
The disqualification procedures must take into account principles which may at times compete with each other. Among these principles are: (1) the integrity of the judicial system which requires both the fact and the appearance of impartiality; (2) that a party, who has a good faith belief grounded in fact that a judge is bias, is entitled to demonstrate that bias; and (3) that the due administration of justice requires that such a demonstration be based on more than opinion or conclusion.
"A judge is not an umpire in a forensic encounter. . . . He is a minister of justice. . . . In whatever he does, however, the trial judge should be cautious and circumspect in his language and conduct." (Citations omitted.) Felix v. Hall-Brooke Sanitarium,140 Conn. 496, 501-02 (1953). "It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Internal quotation marks omitted.) State v. Echols,170 Conn. 11, 13 (1975). Proof of actual bias is not required for disqualification. Dacey v. Connecticut Bar Association, 184 Conn. 21,29 (1981).
In Mayberry v. Pennsylvania, 400 U.S. 455 (1970), the admonition was given that there are times when a judge, instead of representing the impersonal authority of the law, has permitted himself to become personally embroiled with a lawyer in the trial so as to make the judge unfit to sit in judgment on the contempt charge. Id., 465. In that case, the defendant repeatedly insulted and slandered the trial judge. The Supreme Court stated that a judge, "vilified as was this Pennsylvania judge, necessarily becomes embroiled in a running, bitter controversy. No one so cruelly slandered is likely to maintain that calm detachment necessary for fair adjudication." Id. "The inquiry in making this ultimate judgment must be not only whether there was actual bias on [the trial judge's] part, but also whether there was such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interest of the court and the interest of the accused." In re Michael Dodson,214 Conn. 344, 371 (1990), quoting Ungar v. Sarafite, 376 U.S. 575, 588
(1964). (Internal quotation marks omitted.) "A judge, however, is CT Page 4961 a human being and not the type of unfeeling robot some would expect the judge to be." (Internal quotation marks omitted.) Barca v.Barca, 15 Conn. App. 604, 614, cert. denied, 209 Conn. 824 (1988).
The court needs to address some of the personal attacks made by the defendant on the trial judge.
On February 23rd, Mr. Clark wrote a letter to the Administrative Judge in which he claimed, among other things, the following: (1) Judge Karazin has become increasingly arbitrary, capricious and biased in his handling of the contempt hearings; (2) he has continually allowed the plaintiff's attorney to flout his own orders as well as the rules of professional conduct; (3) he has allowed the introduction of evidence improperly and fraudulently obtained by the plaintiff; (4) he has consistently refused to allow the admission of relevant evidence by the defendant; (5) he has constantly interrupted the defendant's testimony and cross-examination with hostile (and often inaccurate) queries and observations; (6) he regularly throws road blocks in the defendant's way by withholding or delaying his access to needed transcripts in the subpoena process; (7) just yesterday, he gave me a "dressing down" in open court; (8) the conduct was described as "arbitrary, capricious and totally unethical conduct;" (9) he became agitated in the middle of my cross-examination of the witness; (10) I could hear his querulous voice saying, "where's that police report?" (11) Judge Karazin simply cannot be trusted to administer justice impartially; (12) Judge Karazin has now reversed his own published ruling of May 1993 . . . after lengthy hearings with a media circus full of lots of unflattering testimony from feminists, police and town officials, it is clear that there is at least "the appearance of impropriety in his failure to remain unswayed by partisan interests, public clamor or fear of criticism;" (13) Judge Karazin capriciously refused to read Judge Ryan's order; (14) in short, Judge Karazin has shown himself to be increasing highhanded, biased and unfair as these hearings have progressed; (15) yesterday's behavior was anything but "patient, dignified and courteous to litigants;" and (16) I therefore ask you in your official capacity as Administrative Judge of this Judicial District to remove Judge Karazin from this case and replace him with a fair minded and evenhanded jurist.
Certain facts evolved at the hearing on February 28th, wherein Mr. Clark claimed that: (1) I engaged in capricious and arbitrary behavior; (2) while I was a captain in artillery in Vietnam he was filling out conscientious objector papers and that caused him CT Page 4962 concern; (3) I seized papers, and he was forbidden to speak when seeking a subpoena; (4) I was not capable of being fair; (5) I did not like him and he doesn't think I am capable of giving him a fair hearing; (6) I based my decision on a preponderance of perjury, not evidence, (7) I gave the plaintiff every latitude — too much latitude and kept him from putting in his evidence; (8) I violated the cannons of ethics and the appearance of impropriety; (9) my order caused him not to get his dream job at Pace University; (10) my July 18th order was a crooked order, the worst order in the State of Connecticut; and (11) the order was written so badly. Mr. Clark further accused me of: (1) being a raging tyrant; (2) Jekyll and Hyde justice; (3) violating the cannons of ethics; and (4) trying fiction not fact. Finally, Mr. Clark summed up by tying everything into the February 23rd letter and stating that I could not be open minded and fair in every aspect of this case.
CONCLUSION
Does this court believe that it can be fair and impartial in proceeding with this case? The answer is yes. Does this court believe any of the allegations of the defendant's motion to recuse are true? The answer is no. The question, however, is not whether the court is impartial in fact. It is simply whether another, not knowing whether the court is actually impartial, may reasonably question the impartiality on the basis of all the circumstances.Rice v. McKenzie, 581 F.2d 1114, 1116 (4th Cir. 1978); Keppel v.BaRoss Builders Inc., 7 Conn. App. 435, 440-41, cert. denied,201 Conn. 803 (1986).
I am not an unfeeling robot. The inquiry in making the judgment concerning recusal must be not only whether there was actual bias on the trial judge's part, but also whether there was such a likelihood of bias or an appearance of bias, that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused. The conduct of both the trial judge and the litigant are to be considered in the calculus of the ultimate determination of whether the trial judge is disqualified. In re Michael Dodson, supra, 214 Conn. 371. Although this court does not believe it has become embroiled in a "running controversy with the defendant", it is concerned that the Appellate Court may conclude that this was a personal attack and the judge should have recused himself after considering the contents of the February 23rd letter and the hearing.
If the court decides the motion for contempt and rules against CT Page 4963 the defendant, one of the issues on the appeal will be whether the court was fair and impartial. Thus, two issues would be created: (1) was the decision sound; and (2) should the motion to recuse have been granted. This creates an additional issue that should not be part of this case.
On the flip side, if this court denies the motion for contempt, will the plaintiff ever believe that it was a fair and impartial decision or will the plaintiff believe that in fact, the court gave in to Mr. Clark's comments and bent over backwards to show that it was fair by denying the motion for contempt.
This court has been part of this turmoil long enough. It is time for a new judge. This case has been before this court from January of 1993, it is now May of 1995. Barring one or two occasions, I have been the sole judge deciding this case. Accordingly, I recuse myself and declare a mistrial on the motion for contempt and order the matter be referred to the Administrative Judge for reassignment and further proceedings as he deems appropriate under all the circumstances.
KARAZIN, J.