[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Sometime in the month of May, 1996, the plaintiff (hereafter "Overhead") entered into an oral contract with Gregory Chere Architects (hereafter "Chere") to excavate as necessary and to construct and erect a manufactured steel building on Overhead's property located on 60 Scott Road in Prospect, Connecticut. The factual predicate which flowed from that oral contract was hardly a thing of beauty or a joy to behold. Chere was employed as a construction manager on the project and his duties, inter alia, were to purchase and assemble the selected building, list the bids for the headquarters, select the construction/contractors, and supervise and manage the headquarters construction itself. Neither party apparently ever requested or received plans and specifications for the steel building from the manufacturer.
Overhead was insistent upon the elevation of the building being no more than twelve (12) inches below the highway grade so that it could be seen from the highway; that the property was to be graded in such a way that any accumulation or pooling of water around the building would be eliminated and that for aesthetic purposes an expensive masonry block finish should be used for the front and right side of the exteriors. As a corollary to the "specifics" provided by Overhead was a very strong desire that the cost of the entire project would not be too expensive and kept as low as possible. It is Chere's position that he was to be remunerated at the rate of seven (7) percent of the total construction cost for his services. Overhead has pleaded that it agreed to five (5) CT Page 3166 percent of the total cost of the project as his fee, but attempted to change that position at trial to reflect no such agreement with respect to the percentages.
In addition to the so called contract being oral, the problem is further complicated by the fact that Chere at one point in the past appears to have had a relationship with the principal of Overhead Door's daughter and there was a personal relationship between him and the family for sometime prior to this particular event. That principal is Angelo Parziale. He, his wife, his daughter and his son John, according to the father "are Overhead Door" and there are no actual shares of stock in the corporation issued, and he for all intents and purposes is the sole moving force within and for the corporation. There appears to be three significant areas of concern that were manifested to Chere by Angelo Parziale. The first and perhaps the most important of these was that the finished building be no more than twelve (12) inches below the street grade so that the building could clearly be seen. The second addressed the problem of potential water and pooling on the property. The third subsequently raised was Overhead's desire to have a second entrance and exit to the property. Chere solicited bids on behalf of Overhead, received invoices for the services rendered and, if he approved, forwarded the invoices to Overhead for payment. This procedure continued until the predictable problems flowing from such an arrangement manifested themselves and seriously threatened the project.
Chere prepared and submitted three different site plans on three different occasions. This is not to suggest the fact that there were three, means that there were mistakes made. That is not the case. During the pendency of the issuance of the permits or shortly thereafter, Parziale went on a vacation. During his absence until just prior to Thanksgiving that year, his son John was on the premises quite frequently, and according to Chere, authorized any differences and problem solutions that were required. John denies this, and says his only involvement was with the selection of color choices. Upon the end of Parziale's vacation, he visited the premises and discovered that fill was taken off the job by the Prospect Development Corporation an evacuation contractor. It appears that no fill was to be removed from the property and if any fill were needed or was in excess it could be utilized through the process known as cutting and filling. Needless to say, he was furious and fired Prospect on the spot. He claims to have fired Chere on the same day, however, Chere continued on the project until February or March of 1997. He was also paid five thousand ($5000) dollars in January of 1997 toward his charges for the services he rendered. It also became very clear that the building was constructed substantially below the highway elevation contour line. Another significant disagreement existed over the failure of Chere to provide a fourteen (14) foot high overhead door for CT Page 3167 drive through services to trailer trucks to permit these trucks to drive right into the building and drive out again. Rather than fourteen (14) feet, that particular door became a twelve (12) foot door, which Chere claims was authorized by Overhead. The court does not find this was realized until such time as it appears to have been too late to do anything about it. While the fourteen (14) foot door was contemplated, the fact that a steel beam or beams running the length of the side walls of the building precluded its installation and use.
There was also evidence received from a land surveyor who prepared an as-built profile and report. The report was written by Chere and signed by the surveyor. Additional and substantial evidence received indicates that Chere attempted to manipulate the record with respect to the building's elevation.
This court is satisfied that the plaintiff did receive a good solid building and the controversies which have been mentioned do little to detract therefrom. The major concerns seem to be the visibility of the building from the highway and the external finishes. To reiterate, with respect to the cost of the project, the oral agreement provided that Chere would obtain bids from various providers and when the bids were submitted, he approved or disapproved them and, if approved, forward them to Overhead Door. Upon completion of the work and the authorization to pay those bills by Chere, Overhead Door would in fact pay for them. Several of Overhead's claims are expressed in terms of funds needed to complete the project. These are expenses that Overhead would have had under any circumstances. With respect to the change in the block to satisfy neighbors' sense of the aesthetic, the court finds that the final location of the building demonstrated that the use of the expensive masonry block finish as opposed to the ordinary metallic finish to be unnecessary if not of little value at all. The court also finds that Overhead paid Prospect Development Corporation in full for the excavation and earth moving that was performed to the date of its termination. That payment, included all funds necessary to complete the project. Additional sums were spent as a result of their default. It must be here noted that the plaintiff named Prospect Development as a party defendant and settled its claims against it before this case was tried.
As a general rule in awarding damages upon breach of contract, the prevailing party is entitled to compensation to be placed in the same position that he would have been in had the contract been properly performed. Bertozzi v. McCarthy, 164 Conn. 463, 468; Sabo v. Strolis,148 Conn. 504, 506. The court is satisfied that the failure to construct the building that the elevation directed, the sale of material off the property to the contractor awarded the excavation contract under Chere's direction, and the unnecessary substitution of the "aesthetic" siding, CT Page 3168 all constitute breaches of Chere's oral contract. In such a situation where there is a breach of contract such as the one in issue here, which involves defective or unfinished construction, damages are measured by computing "the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable and economic waste. . . ." Levesque v. DM Builders,Inc., 170 Conn. 177, 181; see also Keppel v. Baross Builders, Inc.,7 Conn. App. 435, 438. Diminished value may also be established by opinion if (emphasis supplied) based on all the evidence the opinion is credible, and the plaintiff as the owner of the property is qualified to render an opinion of its value including the diminished value. McCahillv. Town Country Associates, Ltd., 185 Conn. 37, 41.
Accordingly, with respect to damages due and owing to Overhead Door from the defendant Chere, the court finds the following damages fair, just and reasonable, and are hereby awarded to Overhead Door from Chere:
Extra expense from masonry block finish versus standard steel finish fifteen thousand ($15,000) dollars.
Therefore, the plaintiff may recover the sum of fifteen thousand ($15,000) dollars of the defendant together with costs of suit.
With respect to the fee that Chere claims is due him, the court finds that by his conduct he has waived any such claim to an additional fee over and above the five thousand ($5000) dollars already paid. Waiver does not have to be expressed but may consist of acts or conduct from which waiver may be implied, to be inferred from the circumstances, if reasonable to do so. It is a question of fact for the trier. Hensley v.Commissioner of Transportation, 211 Conn. 173, 179. In this case, the court finds the failure to locate the building in accordance with the plaintiff's directions, the double dealing as it were with Prospect Development Corporation, and the manipulation of the surveyors report, with the as-built survey, constitute conduct which indeed establishes such a waiver. Chere's attempt to obtain additional fees, therefore, must also fall by the wayside. It stands before this court with unclean hands. The principle by which the plaintiff or a party seeks equitable relief He must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. The court finds that Chere's conduct in this case was not in accordance with that standard. See alsoCollens v. New Canaan Water Co., 155 Conn. 477, 492. Consequently, Chere is awarded no damages as against Overhead.
Judgment may enter in accordance herewith.
Moraghan, J.T.R. CT Page 3169