Toti Contracting Company, Inc. *v.* A. J. Orlando
Contracting Company et al.

Baldwin, C. J., King, Murphy, Shea and Alcorn, Js.

Argued February 6—decided May 8, 1962

David M. Shea, with whom was William M. Shaughnessy, for the appellants (defendants).

Abraham A. Lubchansky, with whom was Sidney Axelrod, for the appellee (plaintiff).

MURPHY, J. The original defendants were the general contractors under a contract with the state of Connecticut for the construction of a portion of the Connecticut turnpike in the town of Fairfield. The plaintiff entered into a subcontract with these defendants to load, truck, grade and compact fill or borrow from pits on the Easton turnpike. The plaintiff was to be paid seventy-five cents per cubic yard. It brought suit to recover a balance of $16,007.33 alleged to be due under the contract and for extra work performed. Subsequently, the surety on the defendants' payment bond was joined as a party defendant, and all the defendants filed a counterclaim or setoff for damages for the improper performance of work by the plaintiff. The court found for the plaintiff on the complaint and for the defendants on the counterclaim and rendered judgment for the plaintiff to recover damages of $9818.07, with interest from the date of suit. The defendants have appealed.

The subcontract provided that the amount of fill for which the plaintiff was to be paid was to be determined by the procedure by which the state computed the fill delivered under the general contract, and the plaintiff agreed to accept as correct the quantities allowed to the defendant contractors

by the state. The state determined the amount of fill excavated from the pits by a procedure, known as "bank measure," in which a topographical survey of a pit prior to excavation was compared to a similar survey made after excavation, the differences in the elevations of the two surveys reflecting the volume of fill excavated. This data was recorded by the state in field survey books and later was plotted on cross-section paper, from which, through the aid of a planimeter, the area between the original ground line and the final elevation line was computed to ascertain the amounts of excavated material. In the application of this procedure, the easterly boundary of the pits on the Easton turnpike was established as a base line, and survey stations were set up along it at various intervals, from which lines were extended westerly at right angles to the base line to provide cross-section topographical surveys.

Originally, the plaintiff claimed that it had excavated 125,928 cubic yards of fill. The court, after a full trial at which much technical data in the form of testimony as well as statistical and engineering exhibits were presented, concluded that the plaintiff had established by the more credible evidence that the amount excavated was 119,713.7 cubic yards. This total was based on a breakdown as follows:

| | | | | |
|---|---|---|---|---|
| Area I | Pit 3 | Station 0.0 to 6.0 | 60,677.4 cu. yds. | |
| Area II | Pit 3 | Station 6.0 to 7.0 | 16,400.0 " | " |
| Area III | Lower Pit 3 | | 529.3 " | " |
| Area IV | Pit 4 | | 42,107.0 " | " |
| | | Total | 119,713.7 " | " |

Areas III and IV do not present any problem on this appeal. The amount for area IV was, in the trial court, stipulated by the parties as correct. The

area III figure is the amount which the defendants asserted the plaintiff had dug in the lower pit. The court accepted this figure rather than the claim of the plaintiff that it had excavated 1048.9 cubic yards there. Naturally, the defendants are satisfied with this finding, and since the plaintiff has made no attempt to attack it, it stands.

Much of the difficulty which attended the trial of this matter is due to the fact that the figures representing the ground elevations before excavation, as determined by the consulting engineers representing the state, had been revised, and the final figures were not furnished to the plaintiff until just prior to trial. Also, although the contract provided that the amount excavated was to be determined on the basis of the amount allowed by the state to the defendant contractors, the record does not indicate that the defendants offered proof of the allowances except as to area I, which we will now discuss.

The court based its finding of the fill excavated in this area on computations made by the plaintiff's engineer. His original figure was much higher, but it was revised when the state's final ground line was established. The defendants produced in evidence the records of the highway department which showed that the defendant contractors had been allowed 61,685.3 cubic yards for excavated material in area I. Under the terms of the contract, this allowance rather than the plaintiff's computation governed the compensation due the plaintiff. From this total there must be deducted 1680 cubic yards, representing material which the plaintiff agrees was not excavated by it. The court correctly found that the plaintiff had dug two access roads into the pits and was entitled to compensation for 447.5 cubic

yards thus excavated. With these adjustments, the resulting total of 60,452.8 cubic yards is the amount of fill excavated by the plaintiff in area I, and the finding is corrected accordingly. Practice Book § 396.

The amount excavated in area II presents a different problem. In discussions prior to trial, the plaintiff claimed that it had excavated 16,400 cubic yards in this area, whereas the defendants maintained that the amount did not exceed 8000 cubic yards. The plaintiff offered to compromise at 12,712 cubic yards to settle the matter, but the defendants refused to do so. At the trial, the defendants were willing to agree to the figure offered in compromise. The plaintiff, however, in recomputing its figures on the basis of the state's final elevations, claimed that it had actually excavated 23,564.8 cubic yards. In response to an inquiry by the court at the end of the trial, it was agreed by the parties that the amount excavated in this area was to be determined by the court as a question of fact from the estimates of 12,712, 16,400 and 23,564.8 cubic yards. The court accepted the plaintiff's original computation of 16,400 cubic yards as the amount excavated. There was no error in so doing. *United Construction Corporation* v. *Beacon Construction Co.*, 147 Conn. 492, 495, 162 A.2d 707. The finding is corrected to recite that the total amount of fill excavated by the plaintiff from the four areas was 119,489.1 cubic yards, for which it earned $89,616.83.

The defendants dispute an item of $78 in the extras awarded the plaintiff. It represents a claimed expenditure for a truck used in the operations of the defendant contractors rather than for the plaintiff and for which the plaintiff sought reimbursement in accordance with customary prac-

tice. The defendants objected to the introduction of the invoice because it was not shown that the work had been done for the defendant contractors. The plaintiff's president testified that his knowledge of the matter was based on what the trucker had told him. This was hearsay. Under these facts, the plaintiff was not entitled to reimbursement for this item. The finding is corrected to show that the plaintiff is entitled to recover $5693.42 for extras. The amount of the setoff for the defendants and the payments already made to the plaintiff are not disputed. The plaintiff is entitled to judgment for $9571.62, with interest from the date of suit.

There is error in the amount of the judgment only, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff to recover $9571.62 with interest.

Costs in this court shall be taxed in favor of the plaintiff.

In this opinion the other judges concurred.