GUIDO BERTOZZI *v.* DANIEL F. McCARTHY ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued February 6—decided March 7, 1973

*Daniel F. McCarthy,* pro se, for the appellant-appellee (named defendant).

*Herbert V. Camp, Jr.,* for the appellee-appellant (plaintiff).

House, C. J.  In July, 1965, the plaintiff, a building contractor, and the defendants, husband and wife, entered into a contract whereby the plaintiff, having title to a lot in Ridgefield, agreed to construct on the lot a house according to certain specifications and on its completion to convey the house and lot to the defendants for an agreed price.  The expected date of occupancy was November, 1965.  Several circumstances, including the failure of the plaintiff to obtain a construction mortgage and changes in plans induced by the defendants, delayed occupancy until July, 1966.  The house at that time was substantially completed, but the plaintiff had not totally discharged his obligation in that the specified garage had not been built and various ancillary construction and cleanup work had not been performed.  In addition, the artesian well drilled pursuant to the contract failed to provide potable water.

The defendants refused to pay a portion of the contract price and the plaintiff sued for this balance.  The defendants filed a counterclaim for their additional expenses and for damages alleged to have resulted from the delay and from the unfitness of the well water.

The court found that the original contract had been modified by a series of mutual oral agreements and that when the defendants occupied the house in July, 1966, "the contract was substantially performed but with much left to be done which was the obligation of the plaintiff under the terms of the contract."  In rendering its judgment on the complaint and the counterclaim, the court took into

consideration, so far as it found that they had been proved by a fair preponderance of the evidence, the "extras" provided by the plaintiff, the "credits" to be extended to the defendants, the reasonable extra expenses the court found to have been incurred by the defendants because of the delay, and the cost of the garage which had not been built. The judgment awarded $8765 to the plaintiff on the complaint and $5181.25 to the defendants on the counterclaim. Neither interest nor costs were awarded to any party. From the judgment the plaintiff and the defendants have appealed to this court.

The plaintiff has preserved two claims on appeal. The first is that the court erred in not awarding interest on the judgment from the time that the defendants occupied the house until the date of judgment. In this connection, the court expressly found that the amounts due the parties on the complaint and the counterclaim, respectively, were not liquidated until the date of trial.

" 'The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of any arbitrary rule.' *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 398, 65 A. 134. The real question in each case is whether the detention of the money is or is not wrongful under the circumstances." *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 275, 287 A.2d 374; *Wells Laundry & Linen Supply Co.* v. *Acme Fast Freight, Inc.,* 138 Conn. 458, 463, 85 A.2d 907; *Campbell* v. *Rockefeller,* 134 Conn. 585, 591, 59 A.2d 524. Basically, the question is whether the interests of justice require the allowance of interest as damages for the loss of use of money. *Goldman* v. *Coppola,* 149 Conn. 317, 328, 179 A.2d 817; *Wells Laun-*

*dry & Linen Supply Co.* v. *Acme Fast Freight, Inc.,* supra. Whether a sum in certain circumstances has been liquidated may, of course, be a useful although not necessarily controlling criterion. *Capitol City Lumber Co.* v. *Sudarsky,* 95 Conn. 336, 340–41, 111 A. 349; 22 Am. Jur. 2d 256, 263, Damages, §§ 179, 185; cf. *Loomis* v. *Gillett,* 75 Conn. 298, 300–1, 53 A. 581. The allowance of interest as an element of damages is, thus, primarily an equitable determination and a matter lying within the discretion of the trial court.

In the circumstances of the present case, the trial court clearly acted within the scope of its discretion. Upon finding that the underlying contract had been orally modified in many respects, that it had been substantially performed but that the plaintiff had failed to fulfill his full obligation, and that many of the difficulties and delays were the result of the plaintiff's conduct, the court could reasonably conclude, as it impliedly did, that the defendants had not wrongfully deprived the plaintiff of a sum of money. The findings support a conclusion that the plaintiff was at least partly responsible for the defendants' refusal to pay a portion of the amount due on the contract. Accordingly, we do not find that there was any abuse of the court's discretion.

The plaintiff's second properly preserved claim is that the court erred in determining the allowance due the defendants for the construction of a garage in substitution for the one which the plaintiff failed to construct. The defendants sought and received a "credit" for the cost of building their own garage, which was of a type different from that specified in the contract. The plaintiff testified that his cost of constructing the garage as specified in the contract would have been $1500. The court, however,

awarded a credit of $2400. The plaintiff claims that the award of the higher figure was erroneous in that there was no evidence to support an award greater than $1500.

As a general rule, contract damages are awarded to place the injured party in the same position as he would have been in had the contract been fully performed. *Bachman* v. *Fortuna,* 145 Conn. 191, 194, 141 A.2d 477; *Lee* v. *Harris,* 85 Conn. 212, 214, 82 A. 186. We recognize that "[t]here is no unbending rule as to the evidence by which such compensation is to be determined"; *Bachman* v. *Fortuna,* supra, *Lee* v. *Harris,* supra; and that damages may be based on "reasonable and probable estimates." *Kay Petroleum Corporation* v. *Piergrossi,* 137 Conn. 620, 624, 79 A.2d 829. But it is equally clear that damages must be based on evidence. "In the ordinary contract action the court determines the just damages from evidence offered." *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.,* 153 Conn. 681, 689, 220 A.2d 263. Damages, moreover, may not be based on hearsay. *Toti Contracting Co.* v. *A. J. Orlando Contracting Co.,* 149 Conn. 473, 478, 181 A.2d 594. We find nothing in the record or in the appendices to the briefs which discloses that any evidence was submitted to the court which would support an award for this contested garage item in excess of the $1500 as to which the plaintiff testified. Under these circumstances, the judgment on the counterclaim must be reduced by the $900 difference between the $1500 which there was evidence to support and the $2400 which the court actually awarded.

In their cross-appeal the defendants press three basic claims. The first is that the court erred in refusing to hear testimony concerning their claim for damages for physical and emotional injuries

which they assert resulted from the plaintiff's alleged breach of contract. Specifically, the court sustained the plaintiff's objection to a question directed to the named defendant on his direct examination: "As a result of the delay in moving into your new house, did you suffer any emotional or physical reaction?" In pressing the claim for this question, the defendants asserted that the plaintiff had failed to notify them of the delay in obtaining a construction mortgage which resulted in "many months of lost time." They represented to the court: "Now, we take the position that this failure was so wanton and so reckless and so really unnecessary as to almost be culpable and to bring us into the area of almost a tort."

It is true that in certain limited circumstances compensable tort damages may arise from the breach of a duty which "may be the outgrowth of a contractual relationship between the parties." *Urban* v. *Hartford Gas Co.,* 139 Conn. 301, 304, 93 A.2d 292. Paraphrasing what we said in that case (pp. 306, 307), the test would be whether the plaintiff intentionally and unreasonably subjected the defendants to emotional distress which he should have recognized as likely to result in illness or other bodily harm. If the plaintiff did not intend to cause emotional distress, he is liable in damages only if he should have realized that his conduct involved an unreasonable risk of causing the distress and from the facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm. See also Restatement, 2 Torts §§ 312, 313. In the present counterclaim, it was nowhere alleged, much less proved, nor on the trial was there even an offer of proof, that the plaintiff either intentionally subjected the defendants to any sort of dis-

tress or unreasonably created a risk of distress or should reasonably have foreseen that it might result from any action on his part. Under these circumstances, we find no error in the court's ruling.

The defendants' second claim is that the trial court erred in failing to award to them as damages the difference in cost between two mortgages. The named defendant testified that in June, 1965, he had received a commitment for a homeowner's mortgage for $25,700 at 6 percent interest payable over twenty-five years. On August 18, 1966, this commitment was cancelled, apparently because the house was not yet completely constructed and the well was contaminated. The defendants procured a new mortgage for $24,000 at 6½ percent payable over twenty-five years. Over the objection of the plaintiff, testimony as to the cumulative difference in interest payments for twenty-five years was allowed, but the court subsequently omitted the difference from the judgment awarded on the counterclaim. This omission is claimed as error.

The court found not only that the delays caused by the plaintiff were not the sole cause of the defendants' loss of their original mortgage commitment but that the parties orally agreed to a series of modifications in the plans and specifications which caused delay, and it expressly found that "[t]he lapse of time between the date of defendants' first mortgage commitment and its revocation was due in part to delays caused by the plaintiff and in part to delays caused by the defendants." It is axiomatic that the delay of one party may be excused where it is caused, at least in part, by the acts of the other party. See 13 Am. Jur. 2d 51–55, Building and Construction Contracts, §§ 48–51. We find no error in this portion of the court's decision.

The defendants' final claim concerns the well which supplied water for the house. The court found that under the terms of the contract the liability of the plaintiff in providing a well was limited to $1000. The plaintiff drilled and connected a well, but after the defendants occupied the house it was discovered that the water in the well was not potable. This case differs materially from *Sasso* v. *Ayotte,* 155 Conn. 525, 235 A.2d 636, on which the defendants rely. In that case the plaintiff alleged negligence on the part of the well-digger defendants and it was found that the jury could have reasonably concluded that the defendants had failed to exercise that degree of care which a skilled well driller of ordinary prudence would have exercised under the circumstances. In the defendants' counterclaim in the present case, there is no allegation of negligence on the part of the plaintiff in drilling the well. Rather, the defendants assert an "implied warranty for fitness of use regarding the providing of a potable well." Significantly, they have provided no citation of authority in support of their contention. The court informed counsel: "As I read the cases, there is no way that a contractor or well-digger can guarantee quantity of water or quality of water. That is up to the Lord." The court's view is supported by the annotation in 90 A.L.R.2d 1346, 1353, 1355. It appears that the dispute over the well item of the controversy was properly adjudicated by the court's allowance of a "well drilling credit" to the defendants in the amount of $125.

The judgment as rendered awarded $8765 to the plaintiff on the complaint and $5181.25 to the defendants on their counterclaim. As we have indicated, the only error we find was in the inclusion in the award to the defendants of the sum of $2400

for the construction of a garage when there was no evidence to support an award for this item in excess of $1500.

There is error only in the amount of the judgment awarded to the defendants, and the case is remanded with direction to reduce the judgment in favor of the defendants by the sum of $900.

In this opinion the other judges concurred.