[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is an executive search recruiter who locates employees for companies and corporations for payment of a fee. In May 1988, he entered into an oral agreement with the director of engineering for Channel Net Corporation, Ron Steiner, to commence a search for a qualified person to fill a position of senior software engineer with Channel Net. Channel Net is a 100% owned subsidiary of Data Switch, the defendant in this case. The defendant has stipulated that for purposes of this action Data Switch is responsible for any obligations of Channel Net, including any contract that Channel Net had with the plaintiff. It is also undisputed that the plaintiff procured an engineer, Gary Jacobson, for the job in the summer of 1988, and after three or four interviews Jacobson was hired by Channel Net on October 4, 1988 at an annual salary of $51,000 with various other 31 benefits from Channel Net and Data Switch. His employment started on October 24, 1988 and he was terminated on December 2, 1988.
There is a dispute between the parties as to the terms of the arrangement between the plaintiff and Channel Net. The plaintiff claims he had an oral contract for a fee of 30% of the starting salary of any employee procured by him and accepted by Channel Net. On that basis the fee for procuring Jacobson would be $15,300, plus Connecticut sales tax of $1,147.50, for a total charge of $16,447.50. That amount was billed to Channel Net on October 24, 1988, the date that Jacobson started work, but it was never paid. The plaintiff claims breach of an oral contract in the first count of the complaint. In the alternative, unjust enrichment and reasonable value of services are claimed in the second and third counts of the complaint. The defendant has raised a defense that it was operating under a prior agreement between Data Switch and Andover Group Inc. signed by one Robert B. Meacham on February 20, 1988. It claims that the defendant believed that Catania was CT Page 647 employed by Andover Group Inc., a corporation thereafter called "Andover"], and that the agreement signed by Meacham controlled the amounts owed to the plaintiff. That agreement provided for a fee of 1% per $1,000 of annual salary up to a maximum of 25% for any applicant procured by the employment agency (Andover), but if the employee hired was terminated by Data Switch for any reason within 90 days that the agency would refund the full fee or find a replacement without cost to Data Switch. The defendant filed three special defenses and a counterclaim to recoup about $1,000 allegedly incurred as expenses in the hiring and training of Jacobson. The defendant also brought a third party complaint against Andover claiming reimbursement from Andover and an officer of it (Nemeth) for any amounts that the defendant was required to pay to the plaintiff
After considering all of the evidence the Court finds that the plaintiff has proven by a fair preponderance of the evidence that he entered into an oral contract with an authorized agent of Channel Net in May 1988 and that he procured an engineer who was hired by it. Channel Net made its own determination that Jacobson met its requirements. Channel Net had the right to discharge Jacobson for any reason, and the reasons for his discharge are immaterial to this action. The plaintiff fully performed the oral contract with Channel Net, and Data Switch is liable for any obligations that Channel Net owes to the plaintiff. Since Catania has proven breach of an oral contract under the first count of the complaint, he is not entitled to recover under the second or third counts. Unjust enrichment and reasonable value of services (quantum meruit) are forms of the equitable remedy of restitution where no express contract has been entered into by the parties, and they are available as remedies only when there is no recovery pursuant to a contract. Burns v. Koellmer, 11 Conn. App. 375,383-385.
The oral agreement for a 30% fee came with a guarantee by the plaintiff that if the employee left or was terminated by Channel Net within the first ten weeks of employment that the fee would be reduced by 10% of the total amount for each full week remaining in the ten week guarantee period. The customary procedure of Channel Net and the defendant was to require some guaranty for employees provided by an employment search agency so that there would be some reduction of the finder's fee if the employee didn't work out within a short period after commencing work, and Channel Net would not have entered into a contract with the plaintiff without it. The plaintiff also claims there was an agreement that the fee would be paid within 15 days of the employee's starting date. CT Page 648 When Catania sent out a bill to Channel Net for $16,447.50, the invoice attempted to tie together the guarantee provision and payment of the bill within 15 calendar days of the employee's starting date. While prompt payment of the fee was anticipated, the Court does not find, despite the invoice, that Channel Net agreed that the guarantee was contingent upon payment of the bill within 15 days. Jacobson was terminated in the sixth week after he started work. Under the terms of the oral agreement, the plaintiff lost 40% of the fee. Since the fee had not been paid he was entitled to 60% of it plus sales tax, or $9,868.50.
The Court finds that Catania was an independent contractor, and that he and others connected with Andover Group Inc. had a similar arrangement. They leased space from that corporation individually, and paid Andover for rent and operating expenses. Billings were done through Andover, which was entitled to deduct any unpaid expenses of Catania and remit the balance of his fees to him. The others employed by Andover including Meacham had similar arrangements. Neither Catania or Meacham were officers of Andover or had authority to bind it to contracts.
The defendant did not meet its burden of proof on any of the three special defenses. The defendant relies upon the agreement dated February 20, 1988 between it and Andover Group Inc. (Exhibit 3). While Andover is listed as the agency on that agreement, it is signed by Meacham without indicating in what capacity he was signing for Andover. The defendant has not proven that Meacham signed the agreement as an authorized agent of Andover. [There was evidence that Meacham was not an agent for Andover, despite any discussions that may have occurred in February 1988 between Meacham and the defendant.] The authority of an agent cannot be proven by the declarations of the agent. E. Paul Kovacs Co. v. Blumgarten, 150 Conn. 8, 13. To overcome this problem the defendant relies upon the concept of apparent authority of an agent. There are two requirements for that concept to apply: (1) it must appear from the acts of the principal that the principal held the agent out as possessing sufficient authority to act for and bind the principal; and (2) there was a good faith reliance on the appearance of authority by the party seeking to bind the principal. Edart Truck Rental Corporation v. B. Swirsky Co., 23 Conn. App. 137,139, 140. Even if Data Switch relied upon Meacham's action in signing a document indicating that he was connected with Andover, it has not been proven that Andover itself did anything to hold Meacham out as an authorized agent entitled to bind Andover and everyone connected with it then and in the future. CT Page 649
There are other problems with the defendant's position. Catania was an independent contractor, not an employee of Andover, and neither he or Channel Net are parties to any agreement between Andover and Data Switch, even if Meachum had authority to enter into a contract for Andover. Also, it is clear that a subsequent oral agreement can supersede a prior written contract. First Hartford Realty Corporation v. Ellis, 181 Conn. 25, 33. There was a meeting of the minds on the basic terms between the plaintiff and officials of Channel Net, acting by Steiner and Robert Smith, and that was all that was required to create an oral contract. The fact that employees of Data Switch thought that the agreement of its subsidiary, Channel Net, was with Andover rather than Catania is immaterial. Data Switch was not a party to the oral agreement. The defendant has not proven that the instrument of February 20, 1988 applies, that the governing contract was with Andover Group Inc., or that the plaintiff made material misrepresentations to the defendant.
There is also no merit to the counterclaim. Channel Net made its own decision on whether to hire Jacobson, and did not rely upon the plaintiffs belief as to Jacobson's qualifications. Moreover it did not incur any special expenses to train Jacobson as a result of any conduct of Catania.
The defendant has also failed to meet its burden of proof on the third party complaint against Andover and Nemeth. Even though the plaintiff billed Channel Net on an invoice bearing a letterhead of "Andover Group Inc." he was an independent contractor and the agreement of February 20, 1988 does not apply. Even by the terms of that written agreement, Andover only agreed to reimburse Data Switch for the fee paid by it "if for any reason the employee hired through this referral terminates employment at Data Switch within a 90 day period". Jacobson was not hired through that referral or actions of Andover. He was hired because of the plaintiff's services. Jacobson was not employed by Data Switch. He was employed by Channel Net. Jacobson was hired based on the oral contract between the plaintiff and Channel Net, not because of the written agreement between Data Switch and Meacham, whether or not Meacham was authorized to act for Andover. The third party defendants have no legal responsibility for any contract between Channel Net and Catania. The obligation of Data Switch to pay Catania is based solely on its acknowledged responsibility for legal obligations of Channel Net and not any contracts it may have had with Andover. CT Page 650
There was no evidence presented showing any involvement of Nemeth. While Meacham was named in the third party complaint as a defendant, he was never served and there is no jurisdiction over him.
The plaintiff claims interest at the legal rate of 10% per year on the amount owed by the defendant, based upon section 37-3a of the General Statutes. In deciding whether prejudgment interest should be awarded there is no set rule; the question in each case is whether the detention of the money is or is not wrongful under the circumstances, and whether it is equitable and reasonable to allow interest as damages for the loss of use of money. Bertozzi v. McCarthy,164 Conn. 463, 466. Whether the sum due is a liquidated amount is not necessarily controlling. Southern New England Contracting Co. v. State, 164 Conn. 644, 664. In this case, the plaintiff claimed the full amount of the commission for an employee that only worked for the defendant's subsidiary for five and a half weeks. Some of the plaintiff's actions indicated that he worked for Andover, inducing a good faith although mistaken belief by the defendant that the liability to pay the fees was limited by the prior written agreement with Andover. While the defendant cannot legally rely on that agreement for reasons previously discussed, Catania sent out bids and reports to Channel Net on the letterhead of Andover Group Inc., and at times claimed that he was its, "senior partner". This is not a situation of bad faith refusal to pay a liquidated debt which was clearly owed, and for equitable, reasons the plaintiff is not entitled to interest.
Judgment shall enter for the plaintiff on the complaint for $9,868.50 plus costs. Judgment shall enter for the plaintiff on the counterclaim. Judgment shall enter for the third party defendants on the third party complaint
ROBERT A. FULLER, JUDGE.