[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
The plaintiff, who was terminated from her employment, has brought an action in four counts against the defendant company. The legal theories advanced in the complaint are (1) breach of express contract (2) breach of implied contract (3) breach of covenant of good faith and fair dealing (4) promissory estoppel (5) negligent infliction of emotional distress.
The defendant has filed a motion to strike directed against all the counts of the complaint.
The standards to be applied in deciding a motion to strike have been often stated. The facts in the complaint are to be construed in the most favorable way for the plaintiff, Amodio v.Cunningham, 182 Conn. 80 (1980) although legal conclusions are not admitted.
 A. Counts One and Two
These combined counts include a claim for breach of an express and implied contract and a breach of a covenant of good faith and fair dealing. These various claims should have been separated out but no request to revise was filed and they were not. Sixteen paragraphs making factual allegations are set forth, there is then a heading entitled "Count One and Two." Paragraph 18 claims that based on the facts alleged the defendant breached an "express and implied contract of employment. Paragraph 19 asserts a breach of the covenant of good faith and fair dealing based on one or more of the following: (1) termination without cause (2) termination without regard to or compliance with its informal policies, procedures and standards for terminating employees (3) failure to state a cause for dismissal which would have afforded the plaintiff an opportunity to rebut and challenge any false allegation that had been brought against her.
(1) Express or Implied Contract
An express contract is a contract whose terms and conditions are expressed in actual words. An implied contract "is an agreement between the parties which is not expressed in words but which is inferred from the acts and the conduct of the parties,"Brighenti v. New Britain Shirt Corporation, 167 Conn. 403, 406
(1974). Both types of contract depend on an actual agreement or CT Page 9115 the undertaking of an actual contract commitment, D'Ulisse-Cupov. Board of Directors of Notre Dame High School, 202 Conn. 206,211-212 (Footnote 2), see Therrien v. Safeguard ManufacturingCo., 180 Conn. 91, 94-95 (1980).
(a)
In the factual allegations of the complaint the plaintiff makes reference to certain factors concerning her employment history and representations made to her. It is difficult to ascertain whether these matters are being alleged to support an express or implied contract theory. Coelho v. Posi-InternationalInc., 208 Conn. 106, 109, 111 (1988) dealt with representations by a company president in the context of analyzing an implied in fact agreement not to fire her without just cause.
Even, if these representations are being used to support an express contract theory since both an express and implied contract require an agreement analysis of the representations from that perspective will address the viability of these representations to support either type of contract theory.
The plaintiff notes in her complaint that she continuously received commendations and promotions, did someone elses work when that individual became ill and was told by the corporate officer all along that "he wanted her on his team;" he told her that "if she would stay with the Company and do all that she could to help him (she) would have job security and financial reward", paragraphs 9, 10 of complaint. Did this language create an express contract or implied contract between employer and employee that the employee would not be fired without just cause? This question must be answered in the context of the settled law in our state that an employment contract for a definite period of time is terminable at the employer's will, Reeiva v. AlliedGrocer's Corporative, 7 Conn. L Rptr. 781 (1992). It has been held that "an agreement for a permanent employment contract is no more than an indefinite general hiring terminable at the will of either party without liability to the other," Fisher v. Jackson,142 Conn. 734, 736 (1955), Sheets v. Teddy's Frosted Foods Inc.,179 Conn. 471, 474 (1980)[.]
In deciding whether what was said by an officer of a company was merely a promise of permanent employment not changing the at will nature of the relationship or in fact gave the employee the CT Page 9116 right not to be fired without just cause the language of Coelhov. Posi-International Inc., 208 Conn. 106 at pages 110-111 is instructive.
Preliminarily it should be noted that from the workers' perspective he or she realistically knows and the cases have held that a promise of permanent employment cannot be a guarantee of a life time job — the worker would also not be bound under such circumstances to work for a company for the rest of his or her productive life. Thus there is no quid pro quo for the finding of any explicit or implicit contractual arrangement going beyond what applies to the ordinary employment at will situation. On the other hand if a worker is told there will not be termination without just cause this is what practically speaking gives him or her job security. In reliance on such a representation the worker may turn down other job opportunities or has reason to make life plans or assume added job duties or non-job related financial or personal obligations he or she would not otherwise have assumed.
If we look at the language of Coelho from that perspective the puffing language noted in the opinion — "This is the team of the future" implying the employee was on the team or "we're growing in the future, join us" etc. — is little more than that, "puffing and really no more than a promise of permanent employment.
Why I believe the verdict for the employee was in fact upheld in Coehlo was not because of some vague promise of job security. In that case the employee was going to become manager of quality control. He knew that type of job often leads to disputes with production staff and such disputes can lead to termination. The employee was explicitly told by the company president that if such disputes arose "he would see that the quality was backed up", the president "had no problem in backing me to the hilt". The employee said the president guaranteed him support and job security when he became involved in a dispute with the manager of manufacturing — "You don't have to worry. Just do your job. If I've got you and (the head of manufacturing) butting heads, then I know you're doing your job. Don't worry about it". Since the employee knew the previous head of quality control had left the job, these representations were important to him and could fairly be held to constitute a promise that he would not be let go unless there was just cause for doing so, Coehlo at pp. 110-111.[1]
CT Page 9117
Thus despite some of the expansive language used the actual basis of the court's opinion is set forth at 208 Conn. page 113:
 We conclude, however, that sufficient evidence was adduced to allow the jury to find that the parties had an implied agreement that the plaintiff would not be terminated as a result of conflicts between the quality control and manufacturing departments as long as he performed adequately in his capacity as manager of quality insurance. (emphasis added)
By way of contrast here the representations are little more than promises of permanent employment — the employer wanted the plaintiff "on his team", if she stayed and did all she could to help him she would have "job security and financial reward." If for the words "job security" we substitute "permanent job" how is this case any different from Fisher v. Jackson at 142 Conn. 736-736 where prior to his hiring at an interview the employee wrote a letter expressing the hope that the job "in the event my services are satisfactory will prove permanent." Here as inFisher there is no statement by the employer that in the event of problems on the job or economic down turn — which are what practically cause people to lose jobs — there would be job security.
I think there at least has to be that to satisfy the Coelho
test for lifting the employment contract out of an employment at will situation. See also Georgia Power Co. v. Busbin,250 S.E.2d 442, 443 (Ga., 1978) were "employment for `life'", "employment until retirement'" language by employer did not create anything other than employment at will contract; Wal-Mart Stores Inc. v.Corvard, 829 S.W.2d 340, 342 (Tex., 1992) where court found oral contract of employment terminable at will although management employee told plaintiff employee that he had a job as long as he "wanted it and made a good hand" and that he had "a job there for life if I wanted it."
The representations made here do not form the basis of an express or implied contract that the plaintiff would not be fired without just cause.
(b)
In this complaint the plaintiff also makes the following CT Page 9118 factual allegations:
 "5. At all times relevant to this complaint it was the policy and practice of defendant to utilize written performance appraisals to advise employees of performance deficiencies and to provide the opportunity to correct such noted deficiencies.
 6. At all times relevant to this complaint defendant required plaintiff to follow the performance appraisal policy and procedures to resolve performance deficiencies of employees she supervised, as well as to submit a self-appraisal to her supervisor.
 7. On information and belief the defendant regularly followed its performance appraisal policies and procedures prior to terminating an employee".
Paragraph 8 goes on to assert the plaintiff received "satisfactory performance appraisals" and indeed "letters of commendation". Paragraph 16 alleges she was terminated without warning or cause.
Can these allegations form the basis of an implied in fact agreement not to fire the plaintiff without just cause or without complying with procedural requirements the company impliedly agreed to honor?
The problem, as I see it, is that the allegations made in this complaint are not those made in either Paris v. NortheastSavings, 11 Conn. L Rptr 575 (1994), Munson v. UnitedTechnologies, 4 CSCR 748 (1988). Those cases involved a so-called "progressive discipline" procedure — such procedures based on a manual or company policy, absent appropriate disclaimers, can form the basis of an implied contract not to fire without following set procedures, cf Finley v. Aetna Life Casualty Co.,202 Conn. 190, 199 (Ftn., 5), (1987).
In Paris the allegation was explicitly made that company "policy requires that, absent gross misconduct necessitating immediate discharge, the following steps must be taken before an employee is terminated, verbal consultation, verbal warning, and CT Page 9119 formal written warning."
Here there are allegations that it was company policy to utilize appraisals, notify employees of deficiencies and provide a chance to correct deficiencies. There is no explicit allegation — as there must be if the court is to find a contractual undertaking — that this procedure had anything to do with progressive discipline or with an assumed obligation to follow these procedures before termination could occur. The vague allegation in paragraph 7: "On information and belief the defendant regularly followed its performance appraisal policies and procedures prior to terminating an employee," emphasis added, does not establish an appropriate claim that in fact it was company policy not to terminate without following certain set procedures. Because B follows A it doesn't mean B was caused by A; I would imagine most companies have internal appraisal procedures and methods of correcting employee deficiencies but this has nothing to do with the court being able to find a company policy of no termination without a chance to be heard or to correct deficiencies before being fired.
Especially in this confusing area the language of pleadings must be exact if the issues between the parties are to be properly joined for trial.
Also if the allegations made here can provide the basis of an implied contract query whether an employer can ever set up a system of internal employee appraisal and counselling without running the risk of turning every employment at will contract into an implied contract not to terminate without following these internal procedures which were adopted without any understanding that they would limit the right to discharge at will?
(2)
Breach of the Covenant of Good Faith and Fair Dealing
The parties both characterize the third claim raised in "Count One and Two" as one for the breach of the covenant of good faith and fair dealing.
There is an exception to termination at will by an employer where there is an allegation of violation of an important public policy, Magnan v. Anaconda Industries Inc., 193 Conn. 558, 572
(1984). Interestingly in her factual allegations the plaintiff CT Page 9120 says an officer of the defendant ordered her to engage in certain accounting practices that were perhaps unethical or even illegal. A violation of public policy need not be statutorily based but can be judicially "conceived", cf Morris v. Hartford Courant,200 Conn. 676, 680 (1986), cf Pierce v. Ortho Pharmaceutical Corp.,399 A.2d 1023 (NJ, 1979) (One of grounds asserted by employee physician was that termination resulted from her refusal to violate Hippocratic Oath; Pierce cited with approval in Sheets v.Teddy's Frosted Foods Inc., 179 Conn. 471, 479 (1980).
However, in the complaint and in her brief the plaintiff does not rely on the above mentioned allegations but relies specifically on the following assertions for her claim that the defendant breached its covenant of good faith and fair dealing.
(1) She was fired without cause.
 (2) She was fired without regard to or compliance with express and informal policies procedures and standards for termination
 (3) She was fired without being given a reason for dismissal thus affording her a chance to rebut charges that might have been false.
It is difficult to understand how these allegations, if accepted as a basis for finding a violation of the covenant of good faith and fair dealing, would not result in a reversal of settled law that a contract of indefinite duration is an employment at will contract of employment and an employee cannot bring an action for wrongful termination.
The plaintiff's argument is based on Munson v. UnitedTechnologies, 4 CSCR 748 (1989) and Paris v. Northeast Savings, 11 Conn. L Rptr 575 (1994). But those cases when they discussed a breach of this covenant found that the employee could make a claim of violation of "reasonable expectations" of the parties concerning termination procedures or the lack thereof — in both cases there was a claim that the employer adopted a progressive discipline procedure. As discussed in the preceding section I can find nothing in the specific allegations made in this complaint that would provide a basis for finding there has been a violation of any implied contract of employment or that anything about the CT Page 9121 employment relationship that developed between the parties would warrant a finding of a breach of the covenant of good faith and fair dealing. Slifkin v. Condec Corp., 13 Conn. App. 538 (1988) also cited by the plaintiff is not on point; that case involved a finding by the court that there was an employment contract of "definite or determinable term" id page 549. None of the allegations of the complaint warrant such a legal conclusion.
That portion of the complaint designated "Count One and Two" is stricken — if the plaintiff pleads over as to any of these legal theories as a result of this opinion, the legal theories should be separated into different and distinct counts.
 B. Promissory Estoppel
Connecticut recognizes liability in contract for action which is induced by a reliance on a promise even though there is an absence of common law consideration, D'Ulise-Cupo Board of NotreDame High School, 202 Conn. 206, 213 (1987). In D'Ulise the court relied on the definition of the doctrine of promissory estoppel set forth in the Restatement (Second) Contracts at § 90, id pp. 213-214. The Restatement says the following at § 90, page 242:
 (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of that promise. The remedy granted for breach may be limited as justice requires.
Commenting on this definition the D'Ulise court said that:
 A fundamental element of promissory estoppel therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard he (sic) had no reason to expect any reliance at all., id page 213. CT Page 9122
I do not believe the allegations in paragraphs 5 through 9 of the complaint support an action for promissory estoppel since "they are neither sufficiently promissory nor sufficiently definite to support contractual liability", D'Ulise-Cupo at 202 Conn. at page 214. For the reasons discussed previously the alleged company policy as to appraisal and correction of work deficiencies is not sufficiently connected to termination and given that and the settled law in this area an employee could not be reasonably expected to rely on that policy as something that would apply to her termination and how it was handled.
In the promissory estoppel count there is a broad claim of the defendant having made "promises" upon which the plaintiff relied on to her detriment. No request to revise was filed asking that the nature of the promises be further defined for the purposes of this count but the count does refer to sixteen paragraphs of introductory factual allegations.
Paragraph 10 does allege that the corporate officer involved in this case requested that the plaintiff do the work of another employee who became ill. The paragraph alleges this work was in addition to the plaintiff's regular work and that doing this work involved "personal sacrifice" and was done on the plaintiff's "personal time". The paragraph further alleges the plaintiff did this additional work in reliance on the corporate officer's "repeated promises of job security and financial reward."
This paragraph does allege "injury" — the plaintiff did extra work and she does allege she was promised "job security".
The Restatement also requires that the party sought to be held liable under a promissory estoppel theory must "make a promise which the promisor should reasonably expect to induce action", Restatement (Second) Contracts § 90.
Paragraph 22 and 23 refer to "promises" made by the corporate officer which he knew or should have known in the exercise of reasonable care would induce the plaintiff to act in reliance on those promises to her detriment.
Since I must give the most favorable reading to the complaint that the allegations permit then I must conclude that the allegations in paragraphs 22 and 23 can refer to those made in paragraph 10 and therefore a motion to strike will not lie against this count. The complaint can be read to allege that the CT Page 9123 plaintiff was promised "job security" in such a way and under such circumstances that the officer making such a promise should have realized that she would rely on such representations to her detriment by doing extra work.
The motion to strike the promissory estoppel count is denied.
 C Negligent Infliction of Emotional Distress
Again it is difficult to ascertain the factual basis for the claim being made in this count from the allegations made in the complaint. There is a general reference to the first sixteen paragraphs of the complaint.
In Collins v. Gulf Oil Corp., 605 F. Sup. 1519, 1522 (D. Conn., 1985) Judge Dorsey noted that Connecticut had not applied this tort to the employment situation. It is difficult to understand why it should not be if the proper facts are alleged. In general for the tort to lie as Judge Dorsey points out the plaintiff must show the defendant should have realized that its conduct involved an unreasonable risk of causing distress and from the facts known to it should have realized that the distress might result in illness or bodily harm, Urban v. Hartford GasCo., 139 Conn. 30 (1952), Bertozzi v. McCarthy, 164 Conn. 463
(1973), Restatement (Second) Torts. The plaintiff need not show actual physical harm or injury so long as the defendant's conduct involved an unreasonable risk of causing distress or illness,Montinieri v. SNETCO CO., 175 Conn. 337 (1978), see Collins at 605 F. Supp. page 1522. Since Collins our court has indicated such a cause of action would lie in the employment context if the proper facts were alleged, Morris v. Hartford Courant Co.,200 Conn. 676, 681-682 (1986).
Insofar as the plaintiff bases her claim in this count on her discharge without cause or warning and the failure by the defendant to discuss her discharge there is no basis for this claim. To establish this claim the plaintiff would have to show the plaintiff's actions in this regard were "unreasonable", seeMorris at 200 Conn. page 275. In light of the court's ruling on the express and implied contract theories of recovery that claim cannot be made in this case.
However, giving the complaint the broadest and most liberal CT Page 9124 reading possible it can be said that this count in incorporating paragraphs 11 through 14 alleges the corporate officer involved here made demands that the plaintiff engage in unethical and perhaps unlawful accounting practices. Paragraph 16, then alleges that the defendant knew or should have known of the "facts surrounding the plaintiff's termination" but neglected and refused to reinstate her." The "facts" referred to can fairly be said to refer in part to the allegations in paragraphs 11 through 14.
Based on these allegations I cannot say that a motion to strike is appropriate here and the claim would be more properly tested by a motion for summary judgment. Also I do not agree with the defendant's analysis of Morris v. Hartford Courant Co., supra. The court at 200 Conn. page 684 specifically sustained the motion to strike because "the plaintiff did not allege that the emotional distress caused by the defendant's conduct exposed him to the risk of illness or bodily harm." It did not reach the question of whether, given the allegedly false accusations onMorris, if the complaint alleged that such accusations exposed the plaintiff to the risk of illness or bodily harm, the complaint could have withstood a motion to strike. The motion to strike the Third and Fourth Count is denied, the motion to strike the First and Second Count is granted.
Corradino, J.