[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
On May 5, 1994 the plaintiff was looking at used cars at the defendant's place of business. She was interested in a 1989 Mitusbishi Montereo and was being waited on by one Joseph Fischetti. Noticing some weather stripping which had been placed on the passenger side door jamb, she asked Fischetti if the car leaked and why it (the weather stripping) was there. He responded that "It was no leak, it doesn't leak, I don't know why it's there." The plaintiff proceeded to purchase this vehicle, relying, she said, on the representation that there was no leak. Before taking delivery of the vehicle, she was told it would go through a twenty-one point inspection.
After paying for the car and accepting delivery, and after the CT Page 3807 60 day limited warranty ran, the plaintiff noticed serious leaking on the passenger side. Repair attempts were unsuccessful and in the process of having repairs attempted, the plaintiff learned that the car had been hit or involved in an accident.
The plaintiff then visited the defendant's dealership and demanded a recision of the contract, following up her visit with a letter dated January 26, 1995 (Exhibit F). The defendant never responded to this demand and this suit followed.
The plaintiff's action is in four counts, sounding in breach of contract, fraud and misrepresentation, fraudulent nondisclosure, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA).
 I
Addressing the breach of contract count, the court notes no specific breach has been alleged or briefed. Rather, the plaintiff alleges facts properly plead in the remaining counts. The plaintiff's claim on this count is rejected.
 II
In her second count, the plaintiff alleges that the representations made by the defendant's salesman were made recklessly and/or negligently and that they induced her to purchase the vehicle.
In its brief, the defendant admits that the plaintiff asked its salesman about the leak, that he stated there was no leak, and that the plaintiff was "satisfied with the salesman's assurance that there was no leak . . . ."
At the very least, these representations were reckless and/or negligent. The weather stripping was obvious as was the fact that the vent window had been caulked heavily around the frame and was inoperable. These facts above dictated an inquiry on the part of the salesman to ascertain the actual condition of the vehicle. It appears obvious to the court that the salesman either knew of the hidden defect or acted recklessly and negligently when he assured the plaintiff all was well.
III
CT Page 3808
In her third count, the plaintiff alleges an intentional or negligent nondisclosure, captioned "fraudulent nondisclosure". The plaintiff's burden for fraudulent nondisclosure is clear and convincing evidence. On the facts presented and available (the salesman was not called by either party), the court resorts to our case law for a determination as to whether his action was fraudulent.
 "A fraudulent representation in law is one that is knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it. Clark v. Haggerd, 141 Conn. 668 673 (1954).
In fact, "An innocent misrepresentation may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. Richard v. A. Waldman Sons, Inc.,155 Conn. 343, 346 (1947).
Once the salesman was asked about the leak by the plaintiff, he had a duty to know the truth before answering. He had the means of knowing, as a car dealership which takes a car in trade employs someone who has expertise and knows the tell tale signs as to whether a vehicle has been in a collision and what its condition is. Finally, if he is going to sell cars and undertakes to answer questions about it (which is commonly done), he ought to know the truth about the vehicle.
 IV
Finally, the plaintiff alleges a CUTPA violation. This court does not subscribe to the proposition advanced by the defendant that a single transaction cannot be found a violation.
The defendant's behavior here is precisely what that act seeks to discourage. First of all, the defendant took the vehicle in trade. To do so, it had to have an employee well versed in the business examine and evaluate it. It had the vehicle in its possession for three days so it had time to examine it, and either did the weather stripping and caulking itself or had reason to question why it was there. When the defendant performed the "21 point" inspection of the vehicle prior to delivering the vehicle to the plaintiff, those conditions had to be apparent, especially a window that could not be opened! Its salesman either was ignorant of the condition, chose to ignore the obvious, or was told to do CT Page 3809 so. Finally, when this plaintiff showed up to complain about the leaks she was entitled to more than a walk around the car and a smart aleck farewell by the defendant's employee.
 V
The defendant presents a defense to this action which is difficult to comprehend.
It suggests that the plaintiff upon being told by the salesman that there was no leak, should have exercised her statutory right under § 42-226 of the Connecticut General Statutes to have another person inspect the vehicle. In effect, she brought this upon herself by believing the salesman!
The defendant also argues that it was inappropriate for the plaintiff to seek repairs elsewhere once she discovered the leak. The plaintiff's response to this was that she had not received any satisfaction from the defendant when she had encountered other problems within the warranty period. An oil leak was only repaired after prior visits were fruitless and when the plaintiff appeared once more with her brother.
Finally, after ignoring the plaintiff's demand for recision in 1995, the defendant proposes a recision arrangement which in effect penalizes the plaintiff for the delay in accomplishing this result.
CONCLUSION
In determining the appropriate damage award, the court relies on Bertozzi v. McCarthy, 164 Conn. 463, 468 (1973), for the proposition that damages may be based on "reasonable and probable estimates."
The plaintiff's expert estimated this repair would cost $4,187.61. A defense witness gave a lower estimate. The court found the plaintiff's witness to be knowledgeable and competent and prefers to accept his figure, rather than to expose this plaintiff to further travail.
Judgment may enter for the plaintiff to recover of the defendant the cost of repairing this defect, $4,187.61, the amounts expended to affect partial repairs, $135.00 and $37.10, counsel fees of $4,225.00 and punitive damages of $4,000.00, for a total of $12,584.71. The plaintiff is also entitled to taxable costs. CT Page 3810
Anthony V. DeMayo Judge Trial Referee