[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves the calculation of damages in a dispute between a mortgage lender and real estate appraisers. The plaintiff, Tuthill Finance, is a partnership that makes "sub prime" or "equity" loans to borrowers whose credit standing generally would prevent them from procuring conventional mortgage loans. The defendants are Arthur Greenlaw and Leonard D'Agostino, principals and/or officers of the third defendant, ABC America's Homebuying Consultants, Inc. (ABC), a real estate appraisal company.
The plaintiff filed a revised two count complaint dated August 26, 1991, which was further amended on May 14, 1997. In the first count, the plaintiff alleges that: United Financial Funding (United Financial), a mortgage broker, retained the defendants in 1989 to appraise twelve unimproved lots located in a subdivision in New Milford, each measuring roughly one-half acre; that the defendants submitted an appraisal to United Finance indicating that each of the eleven lots was worth approximately $65,000, for a total of about $715,000; that the appraisals were used and relied upon by the plaintiff in agreeing to loan $315,000 to Wilfred Megin; Megin used the proceeds to purchase five lots and to pay off prior mortgages on the seven other lots; that Megin gave a mortgage to the plaintiff secured by all twelve lots; that the appraisers breached their contract with United Financial by overvaluing the lots, by failing to describe the adverse topographical features of the lots, and by giving an erroneous CT Page 5833 description of the zone in which the lots were located; that Megin defaulted on his mortgage in 1989; and that the plaintiff had been damaged to the extent of approximately $605,000, the amount of the deficiency judgment entered in 1994 in a foreclosure action against Megin.
In the second count, the plaintiff alleges that the defendants were negligent for the same reasons specified in the first count.
The defendants, in their answer, deny the material allegations of the complaint, and assert several special defenses. In the first special defense to the first count, the defendants claim that the plaintiff is not a third party beneficiary of the contract between the defendants and United Financial. In the second special defense, the defendants contend that the plaintiff failed to mitigate its damages by not pursuing a deficiency judgment against Megin. In the first special defense to the second count, the defendants allege that the plaintiff was contributorily negligent by failing to use due care to independently investigate the credit standing of Megin and the value of the subject lots.
The case was referred to Attorney Howard C. Kaplan, an attorney trial referee, in accordance with General Statutes §52-434 (a) and Practice Book § 430, now Practice Book (1998 Rev.) § 19-3. The referee submitted a report in which he finds the following facts: (1) the type of loan made by the plaintiff does not rely on the credit of the borrower. Rather, it relies exclusively on the equity of the borrower's mortgaged premises; (2) the individual defendants, Greenlaw and D'Agostino, were "disclosed agents" of the corporate defendant, ABC; (3) Megin applied to United Finance for a mortgage loan, and the application was forwarded to the plaintiff as a potential mortgagee; (4) the defendants knew that their appraisal furnished to United Finance in March of 1989 would be forwarded to potential mortgagees such as the plaintiff; (5) although only appraising eleven lots, the defendants' appraisal indicated that the twelve lots were worth a total of $788,000; (6) the plaintiff's loan for $315,000 to Megin was for one year and bore interest at 18% per year; (7) the loan of $315,000 represented approximately 40% of the loan to value ratio; (8) the actual value of all twelve lots was $230,000; (9) the defendants knew, or should have known, that a mortgagee such as the plaintiff, making an asset-based loan, would rely on their appraisal and that they were responsible for its accuracy; CT Page 5834 (10) there were twelve lots mortgaged to the plaintiff, but only eleven appraisals made by the defendants. The plaintiff accepted a mortgage upon Lot 20 without an appraisal as a result of an error confusing that lot with Lot 24; (11) the appraisers failed to advise that (a) the subject lots had substantial rocky ledges and steep slopes, (b) they were non-conforming as to area, (c) only four of the lots were actually buildable as the lots had to be "aggregated" in order to be "lawfully developed" in an "R-80" zone. The appraisal stated the lots were located in a "R-8" zone, and (d) there were comparable sales which the appraisal failed to include; and (12) the plaintiff commenced a foreclosure action against Megin in December, 1989, and a judgment of strict foreclosure entered against Megin, the plaintiff took title to the subject lots on September 1, 1994, and later obtained a deficiency judgment of $604,942.16 as of the date that title vested, representing the debt, interest and related expenses, less $90,000 for the value of the land.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the plaintiff proved that it sustained a monetary loss caused by the negligence of both the corporate defendant and the individual defendants in that they failed to conform to the standard of care required of real estate appraisers; (2) the defendants warranted that their appraisal could be relied upon by a mortgagee; (3) the plaintiff had the right to and did rely exclusively on the defendants' appraisal in making the loan to Megin, and not on the latter's credit worthiness; (4) the parties intended that the plaintiff would be a third-party beneficiary of the contract between United Finance and ABC, and therefore the plaintiff can enforce the contract despite an absence of privity between the plaintiff and the defendants; (5) the value of the lots had to be discounted from $230,000 to $155,000 in order to reflect the estimated period of two years to "market the lots;" (6) the defendants failed to prove their special defense of contributory negligence as the plaintiff had the right to rely on the appraisal without conducting an independent investigation; (7) the plaintiff mitigated damages by promptly starting a foreclosure action and proceeding in a reasonably expeditious fashion thereafter; (8) damages to the plaintiff are to be measured at the time the defendants' appraisal was submitted and the loan was made, and not as subsequent events unfurled including a change in the market value of the collateral, because the plaintiff should know that many mortgagors are successful in "dragging-out" foreclosure proceedings; (9) the plaintiffs were damaged in the amount of CT Page 5835 $280,373, calculated as follows: the difference between the actual loan ($315,000) and the amount the loan would have been if the defendants had accurately reported the true value of the lots, and assuming that the plaintiff maintained the same 40% loan to collateral ratio, is $62,000. $315,000 minus $62,000 is $253,000. That amount is reduced by $21,083 to $231,917 because Lot 20 was not appraised. Less the value of the land acquired by the plaintiff excluding Lot 20 ($82,958) equals $148,959. Plus $131,373, based on General Statutes § 37-3a, equaling 10% interest running from the date of the loan to Megin, June 29, 1989, to the date of this judgment. The grand total is $280,738.
Pursuant to Practice Book § 438, now Practice Book (1998 Rev.) § 19-12, both the plaintiff and the defendants moved to correct the referee's report.[1] The plaintiff asked the referee to: (1) fix damages as of September 1, 1994, when the Megin mortgage was foreclosed and a deficiency judgment was entered, not as of June 29, 1989, when the loan to Megin was made; (2) base the award of damages on the deficiency judgment in the amount of $604,942, less $50,411 to reflect the fact that there was no appraisal of Lot 20 (for a total of $554,531); (3) add that the plaintiff could not collect the deficiency judgment because of Megin's financial status, including his declaring bankruptcy in 1989; and (4) add that the plaintiff would not have made a loan of any amount to Megin if it knew that the lots were only worth $155,000, but rather would have loaned the $315,000 to other borrowers and made a profit. The attorney trial referee declined to make any corrections in his report. However, the referee did note that General Statutes § 37-3a, governing the wrongful detention of money, applies to this case. The referee rejected the request to calculate as damages what the plaintiff possibly could have profited if it did not make the loan to Megin.
The defendants D'Agostino and ABC moved to correct and sought: (1) the deletion of General Statutes § 37-3a interest on the basis that the present action was based on negligence to which General Statutes § 37-3b applies; and (2) to fix the referee's use of the discounted value of the lots ($155,000), instead of the actual value ($230,000), without discounting for the projected time of marketing. The attorney trial referee denied the defendants' motion to correct by stating that General Statutes § 37-3b relates to post-judgment interest, not prejudgment interest. Thus, the referee declined to change his recommendation that judgment enter in favor of the plaintiff and CT Page 5836 against the defendants in the amount of $280,373.
In accordance with Practice Book § 439, now Practice Book (1998) § 19-13, both the plaintiff and the above referred to defendants filed exceptions to the referee's report.[2] The exceptions by the plaintiff relate to the referee's refusal to make to his report the corrections sought in the motion to correct, and specifically, to the referee's refusal to base damages on the amount of the deficiency judgment.
The exceptions filed by the defendants refer primarily to the ruling by the referee discounting the market value of the lots from $230,000 to $155,000 "based upon an estimated period of two (2) years to market the lots."
The plaintiff filed objections to the report as authorized by Practice Book § 440, now Practice Book (1998 Rev.) § 19-14.3.[3] The objections filed by the plaintiff also concern the method of the referee's calculation of damages.
This court's scope of review of an attorney trial referee's report was reiterated by the Supreme Court in Elgar v. Elgar,238 Conn. 839, 848-49, 679 A.2d 937 (1996). The court held that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.). See alsoTDS Painting and Restoration, Inc. v. Copper Beach Farm, Inc.,45 Conn. App. 743, 751, 669 A.2d 173, cert. denied,243 Conn. 908, 701 A.2d 338 (1997) (the court "cannot find additional facts or reject others unless a material fact has been found without evidence.").
Pursuant to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial CT Page 5837 referee's report. The first task is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id.
The file does not include a transcript of the evidence taken by the referee. It may be assumed, therefore, that such a transcript is not "crucial" to the resolution of the case. SeeBeizer v. Goepfert, 28 Conn. App. 693, 706-07, 613 A.2d 1336, cert. denied 224 Conn. 901, 615 A.2d 1049 (1992), cert. denied,507 U.S. 973, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993). This assumption is applicable to this case because the facts are not in dispute. Only the method used by the referee to calculate damages is challenged.
The referee found that the defendants breached their contract with United Financial and were negligent in preparing their appraisal. These findings cannot be disturbed by this court. The only remaining issue, therefore, is the calculation of damages.
"The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as he would have been in had the contract been performed. . . . Damages for breach of contract are to be determined as of the time of the occurrence of the breach." (Citation omitted; internal quotation marks ommitted.) West Haven Sound Development Corp. v. West Haven,207 Conn. 308, 317, 541 A.2d 858 (1988). Compensable tort damages may also arise from a breach of duty stemming from a contractual relationship. Bertozzi v. McCarthy, 164 Conn. 463, 469,323 A.2d 553 (1973). The measure of tort damages is based on the extent of the injuries or damage proximately caused by the defendants' breach of the duty of using reasonable and due care. Id.
In this particular case, the referee found that the defendants were negligent. However, neither the referee nor the parties claim that the amount or extent of damages recoverable by the plaintiff should differ under either theory of liability, as the referee found that the plaintiff proved both breach of contract and negligence.
There are two issues before this court. The first issue is whether the referee's finding, that the amount of the deficiency judgment is not the proper measure of damages, is correct. The referee found that the plaintiff's damages were to be calculated CT Page 5838 on the difference between the amount of the mortgage loan that the plaintiff would have given Megin had the defendants provided a correct appraisal of the value of the collateral, as contrasted with the actual loan of $315,000. The plaintiff claims that the amount of the deficiency judgment entered in the foreclosure action against Megin is the true measure of damages because damages are to be measured at the time a lender resorts to its security.
"The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous."Lawson v. Whitey's Frame Shop, 241 Conn. 678, 690, 697 A.2d 1137
(1997). The plaintiff does not cite to any Connecticut case which mandates that damages must be based on the amount of the deficiency judgment. The referee's report is not clearly erroneous. Therefore, the referee's report should stand.[4]
The next issue is whether the referee's calculation of damages is erroneous because he discounted the value of the lots from $230,000 to $155,000 to reflect the time period required to market the lots. The court notes that the evidence revealed that the unimproved lots were under a plan to be developed. The recommendation of the referee, therefore, is not illegal or illogical, and should stand as the referee acted within his discretion. See TDS Painting Restoration, Inc. v.Copper Beach Farm, Inc., supra, 45 Conn. App. 751.
Based on the standard of review outlined in Elgar v. Elgar, supra, 238 Conn. 848-49, the referee's report and recommendations are accepted. No material error in the referee's report has been found, and there is no other sufficient reason for rendering the report unacceptable. See Practice Book § 443, now Practice Book (1998 Rev.) § 19-17. Judgment may enter in favor of the plaintiff against the defendants for $280,738. Costs are to be taxed by the office of the chief clerk in accordance with General Statutes §52-257 and Practice Book § 412, now Practice Book (1998 Rev.) § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 4th day of May, 1998.
William B. Lewis, Judge